IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:02CV2523 |
| | ) | (1:01CR352) |
| Respondent, | ) | |
| | ) | |
| v. | ) | Judge Lesley Wells |
| | ) | |
| HARDY INGRAM, | ) | |
| | ) | |
| Petitioner. | ) | GOVERNMENT'S BRIEF IN |
| | ) | OPPOSITION TO PETITIONER'S |
| | ) | MOTION TO VACATE, SET ASIDE |
| | ) | OR CORRECT SENTENCE PURSUANT |
| | ) | TO 28 U.S.C. § 2255 |

Now comes the Respondent, United States of America, by and
through its counsel, Gregory A. White, United States Attorney,
and Gary D. Arbeznik, Assistant United States Attorney, and
hereby responds in opposition to Petitioner's Motion to Vacate,
Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, for
the reasons set forth in the memorandum below.

## MEMORANDUM

### STATEMENT OF THE CASE

On July 25, 2001, a federal grand jury returned a two-count indictment against the Petitioner, Hardy Ingram.  Ingram was charged with violating 21 U.S.C. § 841(a)(1), possession with intent to distribute approximately 116.9 grams of cocaine base (crack cocaine) (Count 1); and, violating 18 U.S.C. § 922(g)(1), being a felon in possession of a firearm (Count 2).

On October 9, 2001, pursuant to a written plea agreement, Ingram pleaded guilty to Count 1 of the indictment.  (Plea Agreement-Attached as Ex. 1; Plea Hearing Tr.-Attached as Ex. 2).  A sentencing hearing was held on January 10, 2002.  At the hearing this Court found Ingram to be a "career offender" based on his two prior drug felony convictions for trafficking cocaine.  (Sentencing Tr.-Attached as Ex. 3).  He was subsequently sentenced to a term of 262 months incarceration, to be followed by a five year term of supervised release.  Ingram did not directly appeal his conviction or sentence.

On December 23, 2002, Ingram filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 which is presently before this Court.

### STATEMENT OF THE FACTS

On or about December 1, 1999, officers from the Euclid, Ohio Police Department and the Drug Enforcement Agency, utilizing a

confidential informant, arranged to purchase four and one half

ounces of cocaine-base (crack cocaine) from Ingram.   Ingram

arrived at the location and was arrested in his vehicle which

contained 116.9 grams of cocaine base (crack-cocaine) which was

tested and proven to be cocaine-base (crack-cocaine).   Ingram

signed a written statement admitting that he possessed the 116.9

grams of cocaine base (crack-cocaine) located in his vehicle with

the intent to distribute it to the confidential informant.   In

addition, a firearm loaded with seven rounds of ammunition was

discovered in Ingram's bedroom.

### ARGUMENT

I.   INGRAM, IN THE PLEA AGREEMENT, EXPRESSLY WAIVED HIS RIGHT
     TO THE FILE A DIRECT APPEAL AND/OR POST-CONVICTION WRITS OF
     HABEAS CORPUS

In his motion, Ingram asserts that his counsel refused to

file an appeal in his case.   (Ingram Brief at 4).   However,

Ingram waived his right to file a direct appeal and/or file any

post-conviction writs of habeas corpus in the written Plea

Agreement he entered into with the United States.   Specifically,

paragraph 11 of the Plea Agreement provides:

> The Defendant hereby waives any right to raise
> and/or appeal and/or file any post-conviction writs of
> habeas corpus concerning any matters pertaining to the
> prosecution including all motions, defenses, probable
> cause determinations, his plea of guilty, objections to
> the Court's entry of judgment against defendant and
> imposition of sentence under Title 18, United States
> code, Section 3742 (sentence appeals).

(Plea Agreement at ¶ 11).

- 4 -

In addition, the record also reflects that this Court informed Ingram that he was giving up his "right to raise or appeal or file any post-conviction writs". (Plea Tr. at 17). Ingram responded affirmatively to the questions by this Court as to whether he understood that he was giving up that right. (Id).

The Sixth Circuit in United States v. Allison, 59 F.3d 43 (6th Cir.), cert. denied, 516 U.S. 1002 (1995), considered the validity of a defendant's waiver of her appeal rights in a written plea agreement. In Allison, the defendant entered into a written plea agreement with the United States wherein she agreed not to appeal the constitutionality or legality of the sentencing guidelines or to appeal the accuracy of any factor stipulated to by the parties. One of the factors stipulated to in the plea agreement was that Allison's offense level would be increased by two levels for abuse of position of trust or use of a special skill pursuant to USSG § 3B1.1. The Allison Court, in rejecting the defendant's claim on appeal that the district court erroneously enhanced her offense level by two points for abuse of trust or use of a special skill, reasoned that the defendant had waived her right to appeal the applicability of the two level increase.

Moreover, in United States v. Ashe, 47 F.3d 770 (6th Cir.), cert. denied, 516 U.S. 859 (1995), the Sixth Circuit approved the "waiver of appeal" language in a written plea agreement; thereby

- 5 -

holding that a defendant is essentially barred from raising on
appeal any aspect of his sentencing when he has entered into a
written plea agreement setting forth the waiver and where the
waiver was knowingly and voluntarily made.  Accord United States
v. Schmidt, 47 F.3d 188 (7th Cir. 1995); United States v. Attar,
38 F.3d 727 (4th Cir. 1994), cert. denied, 514 U.S. 1007 (1995);
United States v. Marin, 961 F.2d 493 (4th Cir. 1992); United
States v. Wiggins, 905 F.2d 51 (4th Cir. 1990); United States v.
Clark, 865 F.2d 1433 (4th Cir. 1989).

    The Sixth Circuit extended the rule permitting a knowing and
intelligent waiver of the right to appeal as part of a plea
agreement to waivers of collateral review.  United States v.
Watson, 165 F.3d 486 (6th Cir. 1999).  Because Ingram signed the
written Plea Agreement wherein he expressly acknowledged that he
had read and understood the Agreement and that he was entering
into the Agreement freely and voluntarily, his attempt to now
file a petition for collateral relief, is in direct violation of
the Plea Agreement and should be rejected.  (Plea Agreement at
¶ 12).

    In addition Ingram asserts that this Court "told [him] that
[he] should file an appeal and that [the Court] would appoint
legal counsel".  (Ingram Brief at 4).  However, a review of the
sentencing transcript demonstrates that this Court merely advised
Ingram that his attorney would have to "look at what rights

- 6 -

[Ingram] gave up, and evaluate . . . whether or not there is [was] a legitimate appeal". (Sentencing Tr. at 26). This Court further advised Ingram that based on his financial situation, he would be "entitled to a lawyer at public expense for appeal". (Id. at 27).

As Ingram has waived his right to file the petition presently before the Court, his petition should be dismissed without a hearing on this basis alone. Notwithstanding, a review of Ingram's motion on the merits reveals that he is not entitled to relief.

II. REVIEW ON THE MERITS

Title 28 Title 28, Section 2255, United States Code, sets forth four grounds upon which a federal prisoner may base a claim for relief: "(1) that the sentence was imposed in violation of the Constitution or the laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." Hill v. United States, 368 U.S. 424, 426-27 (1962). A petitioner seeking to vacate a sentence or judgment pursuant to Section 2255 has the burden of sustaining his contentions by a preponderance of the evidence. United States v. Wright, 624 F.2d 557, 558 (5th Cir. 1980).

- 7 -

It is well settled that § 2255 does not reach alleged errors which are not of constitutional or jurisdictional magnitude and which could have been reached by a direct appeal.  United States v. Prince, 868 F.2d 1379, 1382 (5th Cir.), cert. denied, 493 U.S. 932 (1989).

### A.    Ineffective Assistance of Counsel

In his motion, Ingram asserts that he received ineffective assistance of counsel.  A defendant seeking to establish ineffective assistance of counsel must satisfy the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), where the Supreme Court formulated the following test:

> ...First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In attempting to establish that his attorney's performance was deficient, a defendant "must show that counsel's representation fell below an objective standard of reasonableness."  466 U.S. at 687-88.  Judicial scrutiny of counsel's performance, however, "must be highly deferential."

- 8 -

466 U.S. at 689. A reviewing court must ensure that "every
effort is made to eliminate the distorting effects of hindsight,
to reconstruct the circumstances of counsel's challenged conduct,
and to evaluate the conduct from counsel's perspective at the
time." 466 U.S. at 689. The reviewing court is also required to
recognize that "counsel is strongly presumed to have rendered
adequate assistance and made all significant decisions in the
exercise of reasonable professional judgment." 466 U.S. at 690.

An error by counsel, "even if professionally unreasonable",
will "not warrant setting aside the judgment of a criminal
proceeding if the error had no effect on the judgment."
Strickland, 466 U.S. at 691. Deficiencies in counsel's
performance must instead "be prejudicial to the defense in order
to constitute ineffective assistance". Id. at 692. To establish
prejudice, the "defendant must show that there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." Id. at 694.

In evaluating whether Ingram's Sixth Amendment rights were
violated by errors of counsel, the focus is on whether there was
a breakdown in the adversarial process affecting the fundamental
fairness of the trial and the reliability of the result.
Strickland v. Washington, 466 U.S. at 687, 696. Bare allegations
of ineffectiveness are insufficient. Before a hearing on a
habeas corpus petition must be held, "the petition must be

- 9 -

accompanied by a detailed and specific affidavit which shows the petitioner has <u>actual proof</u> of the allegations going beyond mere unsupported assertions." <u>Barry v. United States</u>, 528 F.2d 1094, 1101 (7th Cir.), <u>cert. denied</u>, 429 U.S. (1976) (emphasis added). A petition for habeas corpus based upon speculation and conjecture is "patently insufficient." <u>Id.</u> at 1102. <u>Accord</u> <u>United States v. Brooks</u>, 677 F.2d 907, 911-12 (D.C. Cir. 1982); <u>United States v. Ortega-Velasquez</u>, 465 F.2d 419 (5th Cir. 1972).

In the case of a guilty plea, a defendant must show both that his counsel's representation fell below an objective standard of reasonableness and that a reasonable probability exists that, but for counsel's unprofessional errors, he would not have pleaded guilty. <u>Hill v. Lockhart</u>, 474 U.S. 52, 57-59 (1985); <u>Warner v. United States</u>, 975 F.2d 1207, 1211 (6th Cir. 1992), <u>cert. denied</u>, 113 S. Ct. 1314 (1993).

Ingram contends that his counsel was ineffective because his counsel failed to "make the court aware of the factors that may have been over represented to classify [him] as a 'Career Offender' pursuant to U.S.S.G. § 4B1.1". (Ingram Brief at 5).

Ingram pleaded guilty to count 1 of the indictment, a violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute 116.9 grams of cocaine base (crack-cocaine). A violation of § 841(a)(1) carries a statutory maximum penalty of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). Ingram

was sentenced to 262 months incarceration, well below the
statutory maximum penalty.

Furthermore, in his written Plea Agreement and at the plea
hearing, Ingram declared that he was fully satisfied with the
assistance provided by his attorney.  (Plea Agreement at ¶ 12;
Plea Tr. at 4).  Ingram's counsel was successful in having Count
2 of the indictment dismissed, a violation of 18 U.S.C.
§ 922(g)(1), and in obtaining a three-level reduction for
acceptance of responsibility.  Moreover, because of Ingram's
cooperation, the government did not file for enhancements,
pursuant to 21 U.S.C. § 851.  If the enhancements had been filed
for Ingram's two prior felony drug convictions, he would have
faced a mandatory sentence of life without parole.

Ingram wholly fails to show that counsel committed any error
in the handling of his case, let alone one that prejudiced him.
Accordingly, this claim lacks merit.

B.  Plea was Knowing and Voluntary

Ingram further contends that his "plea of guilty was
unlawfully induced and not made voluntarily and with the
understanding of the true nature of the charge or consequences of
the plea".  (Ingram Brief at 5).  However, he does not present
any evidence that his plea was anything but knowing and
voluntary.

- 11 -

Ingram's plea bargain was executed pursuant to the procedures laid out in Rule 11 of the Federal Rules of Criminal Procedure. The Sixth Circuit has held that a plea bargain is a contract by law. "[A] plea bargain itself is contractual in nature and subject to contract-law standards." United States v. Mandell, 905 F.2d 970, 973 (6th Cir. 1990). "Plea bargaining 'is an essential component of the administration of justice. Properly administered, it is to be encouraged". Santabello v. New York, 404 U.S. 257, 260 (1971).

The court has to determine that the plea bargain meets the elements of being a knowing and voluntary plea from the defendant. Hill v. Lockhart, 474 U.S. 52 (1985). To accomplish this, Rule 11 "ensures a colloquy that 'exposes the defendant's state of mind in the record through personal interrogation.'" Kay v. United States, 806 F.2d 133, 136 (7th Cir. 1986). "[W]here the court has scrupulously followed the required procedure, 'the defendant is bound by his statements in response to that courts inquiry.'" Warner v. United States, 975 F.2d at 1212 (quoting Baker v. United States, 781 F.2d 85, 90 (6th Cir.), cert. denied, 479 U.S. 1017 (1986)). A voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. United States v. Baker, 781 F.2d at 92.

"The three core concerns of Rule 11 are:  (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know the consequences of his plea . . .".  <u>United States v. Stitzer</u>, 785 F.2d 1506, 1513, n.2 (11th Cir.), <u>cert. denied</u>, 479 U.S. 823 (1986); <u>United States v. Ferguson</u>, 918 F.2d 627, 630 (6th Cir. 1990).

Ingram asserts that his plea of guilty was "unlawfully induced and not made voluntarily".  (Ingram Brief at 5).  He further states that his "attorney . . . begun to induce a threat to [him] . . . [and] fearing for the welfare of himself and family . . . [he] began to falsely agree with any comments or signing of any plea agreement".  (<u>Id</u>.).  The plea transcript belies this assertion.  Subsequent to explaining his constitutional rights, this Court examined Ingram pursuant to Rule 11 to determine his voluntariness and understanding before accepting the plea.  His responses to the court's inquiry attest to the fact that his plea was voluntary and knowing.

> THE COURT:    Did you read every word of this agreement?
> DEFENDANT:    Yes.
>
> *****
>
> THE COURT:    Were you able to read and understand all of this?
> DEFENDANT:    Yes.

- 13 -

THE COURT:      You know what the government is charging you
                with and what you're proposing to plead
                guilty to?

DEFENDANT:      Yes.

                \*\*\*\*\*

THE COURT:      All right.  Then if you understand those,
                we've gone over the fact that you would be
                pleading to Count 1, and we've gone over the
                statutory penalties here, which are ten years
                to life, a $4 million fine, four years of
                supervised release.

                The prior convictions here of the two felony
                drug offenses are set forth here, and the
                government is agreeing in this not to go
                forward with what they could file because
                you've got two prior drug offenses.  Do you
                understand that?

DEFENDANT:      Yes.

THE COURT:      Okay.  That's part of your agreement.

                \*\*\*\*\*

THE COURT:      Okay.  It says here you've read the
                agreement, it says your offer is freely and
                voluntarily made, and no one has threatened
                or promised you anything or forced you to do
                this against your will.  Is that right?

DEFENDANT:      Yes.

(Plea Tr. at 5-6; 12-13; 17).

    Ingram's sworn responses clearly sufficed to express the

voluntariness and understanding of the charges against him at the

time of his guilty plea.  Moreover, Ingram has failed to provide

any evidence other than a bare conclusory assertion that his

attorney "induce[d] a threat to [him]" which made him "falsely"

- 14 -

agree to plead guilty. Accordingly, this claim is also without merit.

## C.    State Convictions/Career Offender

Ingram also contends that "one State conviction case, was. . . overstated and not a felony by State Laws and did not exceed a sentence of 12 months to enact the term a felony offense". (Ingram Brief at 5). He contends that his prior convictions "did not merit the application under the USSG §4B1.1". (Id. at 6).

Section 4B1.1 of the United States Sentencing Guidelines (USSG) provides, in part:

> (a)  A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

In defining the terms used in § 4B1.1, the guidelines provide that:

> The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the. . . distribution . . . of a controlled substance . . .

USSG § 4B1.2.

The guidelines further provide that a "prior felony conviction" means a prior adult federal or state conviction for an offense

- 15 -

"punishable by . . . imprisonment for a term exceeding one year, <u>regardless of whether such offense is specifically designated as a felony</u> and <u>regardless of the actual sentence imposed</u>." (Emphasis added).  USSG § 4B1.2, comment. (n.1).

In the instant case, Ingram's prior controlled substance convictions upon which his career offender status was based are:

1.  Trafficking Cocaine (CR247944) - 1989:  Ingram pleaded guilty to trafficking in cocaine and a drug abuse count was dismissed.  On 3/21/91, Ingram was sentenced to 1 year incarceration, he was released on 5/29/92; and

2.  Trafficking Cocaine (CR262020) - 1991: Ingram pleaded guilty to trafficking cocaine. He was arrested in possession of 20 rocks of crack cocaine when he was observed by officers approaching vehicles and leaning into them making what the officers believed to be drug transactions.  A second drug trafficking count was dismissed.  On 6/10/91, Ingram was sentenced to 18 months incarceration and was released on 5/19/92.

Ingram fails to demonstrate that his prior convictions were over-represented and somehow "did not merit application under USSG §4B1.1".

Moreover, as part of the plea agreement, the government agreed to forego the filing of 21 U.S.C. § 851 enhancements for which Ingram would have faced a mandatory sentence of life imprisonment without parole.  To a very large degree, the agreement to forego the filing of the enhancements was predicated on the parties' agreement that Ingram qualified as, and was

- 16 -

properly punishable as a career offender within the meaning of
the sentencing guidelines.  (Plea Agreement at ¶¶ 5-7).

### D.   Downward Departure Is Not Warranted

Finally, Ingram contends that because of his "addictive drug
abuse [and] his physical permanent (wheel-chair) bound
disability", his case is "outside of the heartland of guideline
cases and . . . warrants a downward departure" under Koon v.
United States, 518 U.S. 81, 86 (1996).  (Ingram Brief at 6).

As the Supreme Court noted in Koon, 18 U.S.C. § 3553(a)
"allows a departure from the range if the court finds there
exists an aggravating or mitigating circumstance of a kind, to a
degree not adequately taken into consideration by the Sentencing
Commission in formulating the Guidelines."  Id. at 81.

United States Sentencing Guidelines § 5H1.4 provides in
part:

> Physical condition or appearance, including physique,
> is not ordinarily relevant in determining whether a
> sentence should be outside the applicable guideline
> range.  However, an extraordinary physical impairment
> may be a reason to impose a sentence below the
> applicable guideline range. . .

> Drug or alcohol dependence or abuse is not a reason for
> imposing a sentence below the guidelines. . .

USSG § 5H1.4.  This policy statement specifically lists drug
dependence or abuse as a factor that can never be a basis for
departure.  Therefore, Ingram's "addictive drug abuse" is not

relevant in determining whether his sentence should be outside
the applicable guideline range.

In addition, § 5H1.4 requires that a defendant have an
extraordinary physical impairment before a downward departure may
be considered. Ingram, being "wheel-chair bound", is not
sufficient to warrant a downward departure.  See <u>United States v.
Colvin</u>, 19 Fed.Appx. 249 (6th Cir. 2001) (unpublished)
(myasthenia gravis (a condition which causes double vision,
weight loss, weakness and sight loss), hypothyroidism, back
problems, heart murmur and paralyzed right foot, not valid
grounds for departure); <u>United States v. Benson</u>, 15 Fed.Appx. 291
(6th Cir. 2001) (unpublished) (congestive heart failure,
cardiomegaly, hypertension, an enlarged heart, acute pulmonary
edema, high blood pressure and asthma, did not warrant
departure); <u>United States v. Layden</u>, 11 Fed.Appx. 392 (6th Cir.
2001) (unpublished) (hypertension, kidney disease, progressive
loss of vision in one eye, dialysis contemplated within three
years, did not warrant departure); <u>United States v. Russell</u>, 156
F.3d 687, 694 (6th Cir. 1998)(deafness alone may not be basis of
departure under § 5H1.4); <u>United States v. Winnicki</u>, 85 F.3d 630
(6th Cir. 1996) (unpublished) (high blood pressure, nervous
problems, arthritis, gastritis, depression, hormone therapy and
wrist surgery, not sufficient to warrant departure); <u>United
States v. Thomas</u>, 49 F.3d 253 (6th Cir. 1995) (HIV-positive

- 18 -

defendant not entitled to downward departure).  The Fifth Circuit

has ruled that an offender who suffers from cancer in remission,

high blood pressure, a fused right ankle, an amputated left leg,

and drug dependency does not justify a downward departure.

United States v. Guajardo, 950 F.2d 203, 208 (5th Cir. 1991).

Furthermore, the Sixth Circuit has held that mistakes in the

application of sentencing guidelines are nonconstitutional errors

to which collateral relief does not apply.

> [N]onconstitutional errors, such as mistakes in the
> application of the sentencing guidelines, will rarely,
> if ever, warrant relief from the consequences of waiver
> . . . [W]hen a federal statute, but not the
> Constitution, is the basis for postconviction attack,
> collateral relief from a defaulted claim of error is
> appropriate only where there has been fundamental
> unfairness, or what amounts to a breakdown of the trial
> process.

Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996).

This motion is a meritless attempt to upset a bargained for

conviction and sentence that Ingram was well aware of and

accepted at the time he pleaded guilty and at the time of

sentencing.

- 19 -

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Petitioner's Motion to Vacate, Set Aside or Correct Sentence be denied.

Respectfully submitted,

GREGORY A. WHITE
United States Attorney

BY: _____

Gary D. Arbeznik
Assistant U.S. Attorney
Reg. No. 0020839
1800 Bank One Center
600 Superior Ave., East
Cleveland, Ohio  44114
(216) 622-3756
Fax No: (216)522-8355
E-mail: Gary.Arbeznik@usdoj.gov

- 20 -

## CERTIFICATE OF SERVICE

A copy of the foregoing Government's Brief in Opposition to Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 was sent by regular U.S. Mail to Hardy Ingram, #38294-060, Federal Medical Center - Devens, P.O. Box 879, Ayer, Massachusetts 01432 on this ____ day of February, 2003.

                                   _____
                                   Gary D. Arbeznik
                                   Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:01CR352 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Wells |
| v. | ) | |
| | ) | |
| HARDY INGRAM, | ) | PLEA AGREEMENT |
| | ) | |
| Defendant. | ) | |

The parties to this Agreement, the United States of America
and the Defendant, HARDY INGRAM, recognize that the Defendant has
been named in a single count indictment, returned on July 25,
2001, in the Northern District of Ohio, Eastern Division, and
numbered 1:01CR352.

Pursuant to Rule 11(e)(1)(A) of the Federal Rules of
Criminal Procedure and in consideration of the mutual promises
set forth below, the following Agreement is entered into by and
between the Defendant, HARDY INGRAM, and the United States of
America by Christa Dimon Brunst, Assistant United States
Attorney.



EXHIBIT
1

- 2 -

## ADVICE OF RIGHTS, CHARGES AND PENALTIES.

1.  The defendant having been advised of his constitutional rights, including his right to a trial by jury or by the court, his right to confront and cross-examine witnesses against him, his right to call witnesses in his behalf, his right to be represented by an attorney at every stage of the proceeding against him, and his privilege against self-incrimination, specifically and voluntarily waives these rights and privileges and agrees to enter a plea of guilty to Count 1 of the indictment.

2.  Count 1 of the Indictment charges the defendant with possession with intent to distribute cocaine-base, in violation of Title 21, Section 841(a)(1) and (b)(1)(A), United States Code.

The defendant understands that the statutory penalty for count 1, a violation of Title 21, Section 841(a)(1) and (b)(1)(A), United States Code, is a mandatory minimum of ten years incarceration up to life incarceration, a $4,000,000.00 fine, and at least 4 years of supervised release.

The parties recognized that the Defendant has previously been convicted of two "felony drug offenses" within the meaning of Title 21, Sections 841(b)(1)(A) and 851, United States Code. The United States hereby agrees to forego the filing of the Title 21, Section 851 Notices.

- 3 -

The defendant further understands that if he violates a condition of his supervised release, the Court may revoke his period of supervised release and sentence the Defendant to a period of incarceration.

The defendant further understands that he shall pay a mandatory $100.00 special assessment pursuant to Title 18, Section 3013, United States Code, and that such assessment is due and payable on the date of sentencing.

SENTENCING

3.  The defendant understands that the recommendations contained herein are not binding on the Court, and the Court may impose any sentence provided for by law.  Defendant further understands that if the Court imposes a sentence different from what is recommended, the defendant will not be permitted to withdraw the guilty plea.

4.  The defendant understands that sentencing is within the discretion of the Court and that the Court is required to consider any and all applicable sentencing guideline provisions. Specifically, the defendant understands that in determining the applicable sentencing guidelines, the Court shall consider the defendant's relevant conduct including, but not limited to, relevant conduct reflected in the counts to be dismissed and/or uncharged conduct.

- 4 -

The defendant further understands the United States' obligation to provide all information in its files regarding the defendant, including charged and uncharged criminal offenses, to the United States Probation Office.

5.    The defendant and Government agree and stipulate for the purpose of this case that the amount of cocaine-base, aka crack-cocaine, including relevant conduct, known by the Government and attributable to the defendant is 116.9 grams.

The parties further agree that the defendant's prior convictions in CR247944 (Cuyahoga County, Ohio)(convicted of trafficking in drugs) and CR262020 (Cuyahoga County, Ohio)(convicted of trafficking in drugs) are both "controlled substance offenses" for purposes of the career offender guideline as set forth in U.S.S.G. §4B1.1.  The Defendant further states that said convictions are both constitutionally valid and that he was represented by counsel during all proceedings regarding his prior convictions and he therefore, qualifies as and is punishable as a career offender pursuant to U.S.S.G §4B1.1.

Based on the foregoing stipulated facts and the following guideline provisions, the parties agree to recommend to the Court that the Defendant's "base offense level" for Count 1 is "37" [§4B1.1(A)].

6.    The government states that at the present time, it has

- 5 -

no reason to believe that the defendant has not accepted responsibility and should the defendant in fact plead guilty and refrain from engaging in conduct inconsistent with acceptance of responsibility, the Government will agree to recommend to the court that the defendant's base level offense be reduced by three (3) levels for acceptance of responsibility, resulting in an adjusted base level offense of "34". However, the defendant understands that the decision regarding acceptance of responsibility rests with the discretion of the Court and will be determined by the Court following an investigation by the Federal Probation Department and in accordance with all applicable guideline provisions set forth in the Application Notes to Section 3E1.1.

7.    The defendant understands that the defendant's criminal history will be determined by the Court after an investigation by the Federal Probation Department, but recognizes that in the all cases where the defendant is a career offender pursuant to U.S.S.G. §4B1.1 that the criminal history is "VI".

8.   The defendant understands that the Court, within its discretion, may order the defendant to pay a fine; that the Court may order the defendant to pay costs of incarceration and/or supervised release; and that the Court may order the defendant to make restitution to any victim(s) of the offense.  The costs of

- 6 -

incarceration and supervised release, and orders of restitution
will be determined by the Court after an investigation by the
Federal Probation Department. *(Gov't will dismiss Cnt 2 at*
*the time of sentenc-*
    9.  The Government agrees not to seek an upward departure *) ing)*
from the applicable sentencing guidelines; however, reserves the
right of allocution and to make a sentencing recommendation.
FACTUAL BASIS *(Δ reserves the right to move for a*
*downward departure.)*

    10.  Should this matter proceed to trial, the Defendant
agrees that the Government could prove the following facts beyond
a reasonable doubt: that on or about December 1, 1999, officers
from the Euclid, Ohio Police Department and the Drug Enforcement
Agency, utilizing a confidential informant, arranged to purchase
four and one half ounces of cocaine-base (crack-cocaine) from the
Defendant.  The Defendant arrived at the location and was
arrested in his vehicle which contained 116.9 grams of cocaine-
base (crack-cocaine) which was tested and proven to be cocaine-
base (crack-cocaine) by the DEA laboratory in Chicago, Illinois.
The Defendant signed a written statement which admitted that he
possessed the 116.9 grams of cocaine base (crack-cocaine) located
in his vehicle with the intent to distribute it to the
confidential informant.

WAIVER OF DEFENSES AND APPEAL RIGHTS.

    11.  The Defendant hereby waives any right to raise and/or

- 7 -

appeal and/or file any post-conviction writs of habeas corpus concerning any matters pertaining to the prosecution including all motions, defenses, probable cause determinations, his plea of guilty, objections to the Court's entry of judgment against defendant and imposition of sentence under Title 18, United States Code, Section 3742 (sentence appeals).

12. The defendant acknowledges that he has read this agreement and that his offer to plead guilty is freely and voluntarily made and that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty. The defendant further declares that he is not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, which would impair his ability to fully understand the terms and conditions of the plea agreement. This plea agreement sets forth the full and complete terms and conditions of the agreement between the defendant and the Government. The defendant further declares that he is fully satisfied with the assistance provided by his attorney.

_____           _____
Date                              HARDY INGRAM, Defendant

**STATEMENT OF ATTORNEY**

13. As attorney for the defendant, I have discussed this case and the plea agreement with my client in detail and have