IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:02CV2523 |
| | ) | (1:01CR352) |
| Respondent, | ) | |
| | ) | |
| v. | ) | Judge Lesley Wells |
| | ) | |
| HARDY INGRAM, | ) | |
| | ) | |
| Petitioner. | ) | GOVERNMENT'S BRIEF IN |
| | ) | OPPOSITION TO PETITIONER'S |
| | ) | MOTION TO VACATE, SET ASIDE |
| | ) | OR CORRECT SENTENCE PURSUANT |
| | ) | TO 28 U.S.C. § 2255 |

Now comes the Respondent, United States of America, by and through its counsel, Gregory A. White, United States Attorney, and Gary D. Arbeznik, Assistant United States Attorney, and hereby responds in opposition to Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, for the reasons set forth in the memorandum below.

## MEMORANDUM

### STATEMENT OF THE CASE

On July 25, 2001, a federal grand jury returned a two-count indictment against the Petitioner, Hardy Ingram.  Ingram was charged with violating 21 U.S.C. § 841(a)(1), possession with intent to distribute approximately 116.9 grams of cocaine base (crack cocaine) (Count 1); and, violating 18 U.S.C. § 922(g)(1), being a felon in possession of a firearm (Count 2).

On October 9, 2001, pursuant to a written plea agreement, Ingram pleaded guilty to Count 1 of the indictment.  (Plea Agreement-Attached as Ex. 1; Plea Hearing Tr.-Attached as Ex. 2).  A sentencing hearing was held on January 10, 2002.  At the hearing this Court found Ingram to be a "career offender" based on his two prior drug felony convictions for trafficking cocaine.  (Sentencing Tr.-Attached as Ex. 3).  He was subsequently sentenced to a term of 262 months incarceration, to be followed by a five year term of supervised release.  Ingram did not directly appeal his conviction or sentence.

On December 23, 2002, Ingram filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 which is presently before this Court.

### STATEMENT OF THE FACTS

On or about December 1, 1999, officers from the Euclid, Ohio Police Department and the Drug Enforcement Agency, utilizing a

- 3 -

confidential informant, arranged to purchase four and one half

ounces of cocaine-base (crack cocaine) from Ingram.  Ingram

arrived at the location and was arrested in his vehicle which

contained 116.9 grams of cocaine base (crack-cocaine) which was

tested and proven to be cocaine-base (crack-cocaine).  Ingram

signed a written statement admitting that he possessed the 116.9

grams of cocaine base (crack-cocaine) located in his vehicle with

the intent to distribute it to the confidential informant.  In

addition, a firearm loaded with seven rounds of ammunition was

discovered in Ingram's bedroom.

ARGUMENT

I.    INGRAM, IN THE PLEA AGREEMENT, EXPRESSLY WAIVED HIS RIGHT
      TO THE FILE A DIRECT APPEAL AND/OR POST-CONVICTION WRITS OF
      HABEAS CORPUS

In his motion, Ingram asserts that his counsel refused to

file an appeal in his case.  (Ingram Brief at 4).  However,

Ingram waived his right to file a direct appeal and/or file any

post-conviction writs of habeas corpus in the written Plea

Agreement he entered into with the United States.  Specifically,

paragraph 11 of the Plea Agreement provides:

> The Defendant hereby waives any right to raise
> and/or appeal and/or file any post-conviction writs of
> habeas corpus concerning any matters pertaining to the
> prosecution including all motions, defenses, probable
> cause determinations, his plea of guilty, objections to
> the Court's entry of judgment against defendant and
> imposition of sentence under Title 18, United States
> code, Section 3742 (sentence appeals).

(Plea Agreement at ¶ 11).

In addition, the record also reflects that this Court informed Ingram that he was giving up his "right to raise or appeal or file any post-conviction writs". (Plea Tr. at 17). Ingram responded affirmatively to the questions by this Court as to whether he understood that he was giving up that right.  (Id).

The Sixth Circuit in United States v. Allison, 59 F.3d 43 (6th Cir.), cert. denied, 516 U.S. 1002 (1995), considered the validity of a defendant's waiver of her appeal rights in a written plea agreement.  In Allison, the defendant entered into a written plea agreement with the United States wherein she agreed not to appeal the constitutionality or legality of the sentencing guidelines or to appeal the accuracy of any factor stipulated to by the parties.  One of the factors stipulated to in the plea agreement was that Allison's offense level would be increased by two levels for abuse of position of trust or use of a special skill pursuant to USSG § 3B1.1.  The Allison Court, in rejecting the defendant's claim on appeal that the district court erroneously enhanced her offense level by two points for abuse of trust or use of a special skill, reasoned that the defendant had waived her right to appeal the applicability of the two level increase.

Moreover, in United States v. Ashe, 47 F.3d 770 (6th Cir.), cert. denied, 516 U.S. 859 (1995), the Sixth Circuit approved the "waiver of appeal" language in a written plea agreement; thereby

holding that a defendant is essentially barred from raising on appeal any aspect of his sentencing when he has entered into a written plea agreement setting forth the waiver and where the waiver was knowingly and voluntarily made. Accord United States v. Schmidt, 47 F.3d 188 (7th Cir. 1995); United States v. Attar, 38 F.3d 727 (4th Cir. 1994), cert. denied, 514 U.S. 1007 (1995); United States v. Marin, 961 F.2d 493 (4th Cir. 1992); United States v. Wiggins, 905 F.2d 51 (4th Cir. 1990); United States v. Clark, 865 F.2d 1433 (4th Cir. 1989).

The Sixth Circuit extended the rule permitting a knowing and intelligent waiver of the right to appeal as part of a plea agreement to waivers of collateral review. United States v. Watson, 165 F.3d 486 (6th Cir. 1999). Because Ingram signed the written Plea Agreement wherein he expressly acknowledged that he had read and understood the Agreement and that he was entering into the Agreement freely and voluntarily, his attempt to now file a petition for collateral relief, is in direct violation of the Plea Agreement and should be rejected. (Plea Agreement at ¶ 12).

In addition Ingram asserts that this Court "told [him] that [he] should file an appeal and that [the Court] would appoint legal counsel". (Ingram Brief at 4). However, a review of the sentencing transcript demonstrates that this Court merely advised Ingram that his attorney would have to "look at what rights

- 6 -

[Ingram] gave up, and evaluate . . . whether or not there is [was] a legitimate appeal". (Sentencing Tr. at 26). This Court further advised Ingram that based on his financial situation, he would be "entitled to a lawyer at public expense for appeal". (Id. at 27).

As Ingram has waived his right to file the petition presently before the Court, his petition should be dismissed without a hearing on this basis alone. Notwithstanding, a review of Ingram's motion on the merits reveals that he is not entitled to relief.

## II. REVIEW ON THE MERITS

Title 28 Title 28, Section 2255, United States Code, sets forth four grounds upon which a federal prisoner may base a claim for relief: "(1) that the sentence was imposed in violation of the Constitution or the laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." Hill v. United States, 368 U.S. 424, 426-27 (1962). A petitioner seeking to vacate a sentence or judgment pursuant to Section 2255 has the burden of sustaining his contentions by a preponderance of the evidence. United States v. Wright, 624 F.2d 557, 558 (5th Cir. 1980).

- 7 -

It is well settled that § 2255 does not reach alleged errors
which are not of constitutional or jurisdictional magnitude and
which could have been reached by a direct appeal.  United States
v. Prince, 868 F.2d 1379, 1382 (5th Cir.), cert. denied, 493 U.S.
932 (1989).

### A.    Ineffective Assistance of Counsel

In his motion, Ingram asserts that he received ineffective
assistance of counsel.  A defendant seeking to establish
ineffective assistance of counsel must satisfy the standards set
forth in Strickland v. Washington, 466 U.S. 668 (1984), where the
Supreme Court formulated the following test:

> ...First, the defendant must show that counsel's
> performance was deficient.  This requires showing that
> counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant
> by the Sixth Amendment.  Second, the defendant must
> show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors
> were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.  Unless a
> defendant makes both showings, it cannot be said that
> the conviction or death sentence resulted from a
> breakdown in the adversary process that renders the
> result unreliable.

466 U.S. at 687.

In attempting to establish that his attorney's performance
was deficient, a defendant "must show that counsel's
representation fell below an objective standard of
reasonableness."  466 U.S. at 687-88.  Judicial scrutiny of
counsel's performance, however, "must be highly deferential."

- 8 -

466 U.S. at 689. A reviewing court must ensure that "every
effort is made to eliminate the distorting effects of hindsight,
to reconstruct the circumstances of counsel's challenged conduct,
and to evaluate the conduct from counsel's perspective at the
time." 466 U.S. at 689. The reviewing court is also required to
recognize that "counsel is strongly presumed to have rendered
adequate assistance and made all significant decisions in the
exercise of reasonable professional judgment." 466 U.S. at 690.

An error by counsel, "even if professionally unreasonable",
will "not warrant setting aside the judgment of a criminal
proceeding if the error had no effect on the judgment."
Strickland, 466 U.S. at 691. Deficiencies in counsel's
performance must instead "be prejudicial to the defense in order
to constitute ineffective assistance". Id. at 692. To establish
prejudice, the "defendant must show that there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." Id. at 694.

In evaluating whether Ingram's Sixth Amendment rights were
violated by errors of counsel, the focus is on whether there was
a breakdown in the adversarial process affecting the fundamental
fairness of the trial and the reliability of the result.
Strickland v. Washington, 466 U.S. at 687, 696. Bare allegations
of ineffectiveness are insufficient. Before a hearing on a
habeas corpus petition must be held, "the petition must be

- 9 -

accompanied by a detailed and specific affidavit which shows the petitioner has <u>actual proof</u> of the allegations going beyond mere unsupported assertions." <u>Barry v. United States</u>, 528 F.2d 1094, 1101 (7th Cir.), <u>cert. denied</u>, 429 U.S. (1976) (emphasis added). A petition for habeas corpus based upon speculation and conjecture is "patently insufficient." <u>Id.</u> at 1102. <u>Accord</u> <u>United States v. Brooks</u>, 677 F.2d 907, 911-12 (D.C. Cir. 1982); <u>United States v. Ortega-Velasquez</u>, 465 F.2d 419 (5th Cir. 1972).

In the case of a guilty plea, a defendant must show both that his counsel's representation fell below an objective standard of reasonableness and that a reasonable probability exists that, but for counsel's unprofessional errors, he would not have pleaded guilty. <u>Hill v. Lockhart</u>, 474 U.S. 52, 57-59 (1985); <u>Warner v. United States</u>, 975 F.2d 1207, 1211 (6th Cir. 1992), <u>cert. denied</u>, 113 S. Ct. 1314 (1993).

Ingram contends that his counsel was ineffective because his counsel failed to "make the court aware of the factors that may have been over represented to classify [him] as a 'Career Offender' pursuant to U.S.S.G. § 4B1.1". (Ingram Brief at 5).

Ingram pleaded guilty to count 1 of the indictment, a violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute 116.9 grams of cocaine base (crack-cocaine). A violation of § 841(a)(1) carries a statutory maximum penalty of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). Ingram

- 10 -

was sentenced to 262 months incarceration, well below the
statutory maximum penalty.

Furthermore, in his written Plea Agreement and at the plea
hearing, Ingram declared that he was fully satisfied with the
assistance provided by his attorney. (Plea Agreement at ¶ 12;
Plea Tr. at 4). Ingram's counsel was successful in having Count
2 of the indictment dismissed, a violation of 18 U.S.C.
§ 922(g)(1), and in obtaining a three-level reduction for
acceptance of responsibility. Moreover, because of Ingram's
cooperation, the government did not file for enhancements,
pursuant to 21 U.S.C. § 851. If the enhancements had been filed
for Ingram's two prior felony drug convictions, he would have
faced a mandatory sentence of life without parole.

Ingram wholly fails to show that counsel committed any error
in the handling of his case, let alone one that prejudiced him.
Accordingly, this claim lacks merit.

**B.    Plea was Knowing and Voluntary**

Ingram further contends that his "plea of guilty was
unlawfully induced and not made voluntarily and with the
understanding of the true nature of the charge or consequences of
the plea". (Ingram Brief at 5). However, he does not present
any evidence that his plea was anything but knowing and
voluntary.

- 11 -

Ingram's plea bargain was executed pursuant to the
procedures laid out in Rule 11 of the Federal Rules of Criminal
Procedure.  The Sixth Circuit has held that a plea bargain is a
contract by law.  "[A] plea bargain itself is contractual in
nature and subject to contract-law standards."  United States v.
Mandell, 905 F.2d 970, 973 (6th Cir. 1990).  "Plea bargaining 'is
an essential component of the administration of justice.
Properly administered, it is to be encouraged".  Santabello v.
New York, 404 U.S. 257, 260 (1971).

The court has to determine that the plea bargain meets the
elements of being a knowing and voluntary plea from the
defendant.  Hill v. Lockhart, 474 U.S. 52 (1985).  To accomplish
this, Rule 11 "ensures a colloquy that 'exposes the defendant's
state of mind in the record through personal interrogation.'"
Kay v. United States, 806 F.2d 133, 136 (7th Cir. 1986).
"[W]here the court has scrupulously followed the required
procedure, 'the defendant is bound by his statements in response
to that courts inquiry.'"  Warner v. United States, 975 F.2d at
1212 (quoting Baker v. United States, 781 F.2d 85, 90 (6th Cir.),
cert. denied, 479 U.S. 1017 (1986)).  A voluntary and intelligent
plea of guilty made by an accused person, who has been advised by
competent counsel, may not be collaterally attacked.  United
States v. Baker, 781 F.2d at 92.

- 12 -

"The three core concerns of Rule 11 are:  (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know the consequences of his plea . . .".  United States v. Stitzer, 785 F.2d 1506, 1513, n.2 (11th Cir.), cert. denied, 479 U.S. 823 (1986); United States v. Ferguson, 918 F.2d 627, 630 (6th Cir. 1990).

Ingram asserts that his plea of guilty was "unlawfully induced and not made voluntarily". (Ingram Brief at 5).  He further states that his "attorney . . . begun to induce a threat to [him] . . . [and] fearing for the welfare of himself and family . . . [he] began to falsely agree with any comments or signing of any plea agreement".  (Id.).  The plea transcript belies this assertion.  Subsequent to explaining his constitutional rights, this Court examined Ingram pursuant to Rule 11 to determine his voluntariness and understanding before accepting the plea.  His responses to the court's inquiry attest to the fact that his plea was voluntary and knowing.

| | |
|---|---|
| THE COURT: | Did you read every word of this agreement? |
| DEFENDANT: | Yes. |
| | ***** |
| THE COURT: | Were you able to read and understand all of this? |
| DEFENDANT: | Yes. |

- 13 -

THE COURT:        You know what the government is charging you
                  with and what you're proposing to plead
                  guilty to?

DEFENDANT:        Yes.

                  * * * * *

THE COURT:        All right.  Then if you understand those,
                  we've gone over the fact that you would be
                  pleading to Count 1, and we've gone over the
                  statutory penalties here, which are ten years
                  to life, a $4 million fine, four years of
                  supervised release.

                  The prior convictions here of the two felony
                  drug offenses are set forth here, and the
                  government is agreeing in this not to go
                  forward with what they could file because
                  you've got two prior drug offenses.  Do you
                  understand that?

DEFENDANT:        Yes.

THE COURT:        Okay.  That's part of your agreement.

                  * * * * *

THE COURT:        Okay.  It says here you've read the
                  agreement, it says your offer is freely and
                  voluntarily made, and no one has threatened
                  or promised you anything or forced you to do
                  this against your will.  Is that right?

DEFENDANT:        Yes.

(Plea Tr. at 5-6; 12-13; 17).

    Ingram's sworn responses clearly sufficed to express the

voluntariness and understanding of the charges against him at the

time of his guilty plea.  Moreover, Ingram has failed to provide

any evidence other than a bare conclusory assertion that his

attorney "induce[d] a threat to [him]" which made him "falsely"

- 14 -

agree to plead guilty.  Accordingly, this claim is also without
merit.

### C.    State Convictions/Career Offender

Ingram also contends that "one State conviction case,
was. . . overstated and not a felony by State Laws and did not
exceed a sentence of 12 months to enact the term a felony
offense".  (Ingram Brief at 5).  He contends that his prior
convictions "did not merit the application under the USSG
§4B1.1".  (Id. at 6).

Section 4B1.1 of the United States Sentencing Guidelines
(USSG) provides, in part:

> (a)  A defendant is a career offender if (1) the
> defendant was at least eighteen years old at
> the time the defendant committed the instant
> offense of conviction; (2) the instant
> offense of conviction is a felony that is
> either a crime of violence or a controlled
> substance offense; and (3) the defendant has
> at least two prior felony convictions of
> either a crime of violence or a controlled
> substance offense.

In defining the terms used in § 4B1.1, the guidelines
provide that:

> The term 'controlled substance offense' means an
> offense under federal or state law, punishable by
> imprisonment for a term exceeding one year, that
> prohibits the. . . distribution . . . of a controlled
> substance . . .

USSG § 4B1.2.

The guidelines further provide that a "prior felony conviction"
means a prior adult federal or state conviction for an offense

- 15 -

"punishable by . . . imprisonment for a term exceeding one year, <u>regardless of whether such offense is specifically designated as a felony</u> and <u>regardless of the actual sentence imposed</u>." (Emphasis added).  USSG § 4B1.2, comment. (n.1).

In the instant case, Ingram's prior controlled substance convictions upon which his career offender status was based are:

    1.    Trafficking Cocaine (CR247944) - 1989:  Ingram pleaded guilty to trafficking in cocaine and a drug abuse count was dismissed.  On 3/21/91, Ingram was sentenced to 1 year incarceration, he was released on 5/29/92; and

    2.    Trafficking Cocaine (CR262020) - 1991: Ingram pleaded guilty to trafficking cocaine. He was arrested in possession of 20 rocks of crack cocaine when he was observed by officers approaching vehicles and leaning into them making what the officers believed to be drug transactions.  A second drug trafficking count was dismissed.  On 6/10/91, Ingram was sentenced to 18 months incarceration and was released on 5/19/92.

Ingram fails to demonstrate that his prior convictions were over-represented and somehow "did not merit application under USSG §4B1.1".

Moreover, as part of the plea agreement, the government agreed to forego the filing of 21 U.S.C. § 851 enhancements for which Ingram would have faced a mandatory sentence of life imprisonment without parole.  To a very large degree, the agreement to forego the filing of the enhancements was predicated on the parties' agreement that Ingram qualified as, and was

- 16 -

properly punishable as a career offender within the meaning of
the sentencing guidelines.  (Plea Agreement at ¶¶ 5-7).

   D.   **Downward Departure Is Not Warranted**

   Finally, Ingram contends that because of his "addictive drug
abuse [and] his physical permanent (wheel-chair) bound
disability", his case is "outside of the heartland of guideline
cases and . . . warrants a downward departure" under <u>Koon v.
United States</u>, 518 U.S. 81, 86 (1996).  (Ingram Brief at 6).

   As the Supreme Court noted in <u>Koon</u>, 18 U.S.C. § 3553(a)
"allows a departure from the range if the court finds there
exists an aggravating or mitigating circumstance of a kind, to a
degree not adequately taken into consideration by the Sentencing
Commission in formulating the Guidelines."  <u>Id</u>. at 81.

   United States Sentencing Guidelines § 5H1.4 provides in
part:

>     Physical condition or appearance, including physique,
>     is not ordinarily relevant in determining whether a
>     sentence should be outside the applicable guideline
>     range.  However, an extraordinary physical impairment
>     may be a reason to impose a sentence below the
>     applicable guideline range. . .
>
>     Drug or alcohol dependence or abuse is not a reason for
>     imposing a sentence below the guidelines. . .

USSG § 5H1.4.  This policy statement specifically lists drug
dependence or abuse as a factor that can never be a basis for
departure.  Therefore, Ingram's "addictive drug abuse" is not

relevant in determining whether his sentence should be outside
the applicable guideline range.

In addition, § 5H1.4 requires that a defendant have an
extraordinary physical impairment before a downward departure may
be considered. Ingram, being "wheel-chair bound", is not
sufficient to warrant a downward departure. See United States v.
Colvin, 19 Fed.Appx. 249 (6th Cir. 2001) (unpublished)
(myasthenia gravis (a condition which causes double vision,
weight loss, weakness and sight loss), hypothyroidism, back
problems, heart murmur and paralyzed right foot, not valid
grounds for departure); United States v. Benson, 15 Fed.Appx. 291
(6th Cir. 2001) (unpublished) (congestive heart failure,
cardiomegaly, hypertension, an enlarged heart, acute pulmonary
edema, high blood pressure and asthma, did not warrant
departure); United States v. Layden, 11 Fed.Appx. 392 (6th Cir.
2001) (unpublished) (hypertension, kidney disease, progressive
loss of vision in one eye, dialysis contemplated within three
years, did not warrant departure); United States v. Russell, 156
F.3d 687, 694 (6th Cir. 1998)(deafness alone may not be basis of
departure under § 5H1.4); United States v. Winnicki, 85 F.3d 630
(6th Cir. 1996) (unpublished) (high blood pressure, nervous
problems, arthritis, gastritis, depression, hormone therapy and
wrist surgery, not sufficient to warrant departure); United
States v. Thomas, 49 F.3d 253 (6th Cir. 1995) (HIV-positive

- 18 -

defendant not entitled to downward departure). The Fifth Circuit
has ruled that an offender who suffers from cancer in remission,
high blood pressure, a fused right ankle, an amputated left leg,
and drug dependency does not justify a downward departure.
United States v. Guajardo, 950 F.2d 203, 208 (5th Cir. 1991).

Furthermore, the Sixth Circuit has held that mistakes in the
application of sentencing guidelines are nonconstitutional errors
to which collateral relief does not apply.

> [N]onconstitutional errors, such as mistakes in the
> application of the sentencing guidelines, will rarely,
> if ever, warrant relief from the consequences of waiver
> . . . [W]hen a federal statute, but not the
> Constitution, is the basis for postconviction attack,
> collateral relief from a defaulted claim of error is
> appropriate only where there has been fundamental
> unfairness, or what amounts to a breakdown of the trial
> process.

Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996).

This motion is a meritless attempt to upset a bargained for
conviction and sentence that Ingram was well aware of and
accepted at the time he pleaded guilty and at the time of
sentencing.

- 19 -

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Petitioner's Motion to Vacate, Set Aside or Correct Sentence be denied.

Respectfully submitted,

GREGORY A. WHITE
United States Attorney

BY:    Gary D. Arbeznik
Assistant U.S. Attorney
Reg. No. 0020839
1800 Bank One Center
600 Superior Ave., East
Cleveland, Ohio  44114
(216) 622-3756
Fax No: (216)522-8355
E-mail: Gary.Arbeznik@usdoj.gov

- 20 -

## CERTIFICATE OF SERVICE

A copy of the foregoing Government's Brief in Opposition to Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 was sent by regular U.S. Mail to Hardy Ingram, #38294-060, Federal Medical Center - Devens, P.O. Box 879, Ayer, Massachusetts 01432 on this 21st day of February, 2003.

_____
Gary D. Ardeznik
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:01CR352 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Wells |
| v. | ) | |
| | ) | |
| HARDY INGRAM, | ) | PLEA AGREEMENT |
| | ) | |
| Defendant. | ) | |

The parties to this Agreement, the United States of America and the Defendant, HARDY INGRAM, recognize that the Defendant has been named in a single count indictment, returned on July 25, 2001, in the Northern District of Ohio, Eastern Division, and numbered 1:01CR352.

Pursuant to Rule 11(e)(1)(A) of the Federal Rules of Criminal Procedure and in consideration of the mutual promises set forth below, the following Agreement is entered into by and between the Defendant, HARDY INGRAM, and the United States of America by Christa Dimon Brunst, Assistant United States Attorney.



EXHIBIT
1

- 2 -

## ADVICE OF RIGHTS, CHARGES AND PENALTIES.

1. The defendant having been advised of his constitutional rights, including his right to a trial by jury or by the court, his right to confront and cross-examine witnesses against him, his right to call witnesses in his behalf, his right to be represented by an attorney at every stage of the proceeding against him, and his privilege against self-incrimination, specifically and voluntarily waives these rights and privileges and agrees to enter a plea of guilty to Count 1 of the indictment.

2. Count 1 of the Indictment charges the defendant with possession with intent to distribute cocaine-base, in violation of Title 21, Section 841(a)(1) and (b)(1)(A), United States Code.

The defendant understands that the statutory penalty for count 1, a violation of Title 21, Section 841(a)(1) and (b)(1)(A), United States Code, is a mandatory minimum of ten years incarceration up to life incarceration, a $4,000,000.00 fine, and at least 4 years of supervised release.

The parties recognized that the Defendant has previously been convicted of two "felony drug offenses" within the meaning of Title 21, Sections 841(b)(1)(A) and 851, United States Code. The United States hereby agrees to forego the filing of the Title 21, Section 851 Notices.

- 3 -

The defendant further understands that if he violates a condition of his supervised release, the Court may revoke his period of supervised release and sentence the Defendant to a period of incarceration.

The defendant further understands that he shall pay a mandatory $100.00 special assessment pursuant to Title 18, Section 3013, United States Code, and that such assessment is due and payable on the date of sentencing.

SENTENCING

3.    The defendant understands that the recommendations contained herein are not binding on the Court, and the Court may impose any sentence provided for by law.  Defendant further understands that if the Court imposes a sentence different from what is recommended, the defendant will not be permitted to withdraw the guilty plea.

4.    The defendant understands that sentencing is within the discretion of the Court and that the Court is required to consider any and all applicable sentencing guideline provisions. Specifically, the defendant understands that in determining the applicable sentencing guidelines, the Court shall consider the defendant's relevant conduct including, but not limited to, relevant conduct reflected in the counts to be dismissed and/or uncharged conduct.

- 4 -

The defendant further understands the United States' obligation to provide all information in its files regarding the defendant, including charged and uncharged criminal offenses, to the United States Probation Office.

5.  The defendant and Government agree and stipulate for the purpose of this case that the amount of cocaine-base, aka crack-cocaine, including relevant conduct, known by the Government and attributable to the defendant is 116.9 grams.

The parties further agree that the defendant's prior convictions in CR247944 (Cuyahoga County, Ohio)(convicted of trafficking in drugs) and CR262020 (Cuyahoga County, Ohio)(convicted of trafficking in drugs) are both "controlled substance offenses" for purposes of the career offender guideline as set forth in U.S.S.G. §4B1.1.  The Defendant further states that said convictions are both constitutionally valid and that he was represented by counsel during all proceedings regarding his prior convictions and he therefore, qualifies as and is punishable as a career offender pursuant to U.S.S.G §4B1.1.

Based on the foregoing stipulated facts and the following guideline provisions, the parties agree to recommend to the Court that the Defendant's "base offense level" for Count 1 is "37" [§4B1.1(A)].

6.  The government states that at the present time, it has

- 5 -

no reason to believe that the defendant has not accepted
responsibility and should the defendant in fact plead guilty and
refrain from engaging in conduct inconsistent with acceptance of
responsibility, the Government will agree to recommend to the
court that the defendant's base level offense be reduced by three
(3) levels for acceptance of responsibility, resulting in an
adjusted base level offense of "34". However, the defendant
understands that the decision regarding acceptance of
responsibility rests with the discretion of the Court and will be
determined by the Court following an investigation by the Federal
Probation Department and in accordance with all applicable
guideline provisions set forth in the Application Notes to
Section 3E1.1.

7.    The defendant understands that the defendant's criminal
history will be determined by the Court after an investigation by
the Federal Probation Department, but recognizes that in the all
cases where the defendant is a career offender pursuant to
U.S.S.G. §4B1.1 that the criminal history is "VI".

8.   The defendant understands that the Court, within its
discretion, may order the defendant to pay a fine; that the Court
may order the defendant to pay costs of incarceration and/or
supervised release; and that the Court may order the defendant to
make restitution to any victim(s) of the offense.  The costs of

- 6 -

incarceration and supervised release, and orders of restitution
will be determined by the Court after an investigation by the
Federal Probation Department. *(Gov't will dismiss Cnt 2 at*
*the time of sentenc-*
    9.  The Government agrees not to seek an upward departure *ing)*
from the applicable sentencing guidelines; however, reserves the
right of allocution and to make a sentencing recommendation.
                          *(∆ reserves the right to move for a*
**FACTUAL BASIS**              *downward departure.)*

    10.  Should this matter proceed to trial, the Defendant
agrees that the Government could prove the following facts beyond
a reasonable doubt: that on or about December 1, 1999, officers
from the Euclid, Ohio Police Department and the Drug Enforcement
Agency, utilizing a confidential informant, arranged to purchase
four and one half ounces of cocaine-base (crack-cocaine) from the
Defendant.  The Defendant arrived at the location and was
arrested in his vehicle which contained 116.9 grams of cocaine-
base (crack-cocaine) which was tested and proven to be cocaine-
base (crack-cocaine) by the DEA laboratory in Chicago, Illinois.
The Defendant signed a written statement which admitted that he
possessed the 116.9 grams of cocaine base (crack-cocaine) located
in his vehicle with the intent to distribute it to the
confidential informant.

**WAIVER OF DEFENSES AND APPEAL RIGHTS.**

    11.  The Defendant hereby waives any right to raise and/or

- 7 -

appeal and/or file any post-conviction writs of habeas corpus
concerning any matters pertaining to the prosecution including
all motions, defenses, probable cause determinations, his plea of
guilty, objections to the Court's entry of judgment against
defendant and imposition of sentence under Title 18, United
States Code, Section 3742 (sentence appeals).

12. The defendant acknowledges that he has read this
agreement and that his offer to plead guilty is freely and
voluntarily made and that no threats, promises, or
representations have been made, nor agreements reached, other
than those set forth in this agreement, to induce the defendant
to plead guilty.  The defendant further declares that he is not
now on or under the influence of any drug, medication, liquor, or
other intoxicant or depressant, which would impair his ability to
fully understand the terms and conditions of the plea agreement.
This plea agreement sets forth the full and complete terms and
conditions of the agreement between the defendant and the
Government.  The defendant further declares that he is fully
satisfied with the assistance provided by his attorney.

_____          _____
Date                     HARDY INGRAM, Defendant

STATEMENT OF ATTORNEY
13.  As attorney for the defendant, I have discussed this
case and the plea agreement with my client in detail and have

- 8 -

advised the defendant of all matters within the scope of Federal
Rule of Criminal Procedure 11, the constitutional and other
rights of an accused, the factual basis for and the nature of the
offense to which the guilty plea will be entered, possible
defenses, and the consequences of the guilty plea.  No
assurances, promises, or representations have been given to me or
to the defendant by the United States or by any of its
representatives which are not contained in the written agreement.
This plea agreement sets forth the fully and complete terms and
conditions of the agreement between the defendant and the
Government.


Date _____                 _____
                                  HARVEY BRUNER
                                  Attorney for Defendant

                                  EMILY M. SWEENEY
                                  United States Attorney


Date _____                 _____
                                  Christa Dimon Brunst
                                  Assistant United States Attorney



APPROVED:


_____
LESLEY WELLS
UNITED STATES DISTRICT COURT

1
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF OHIO
2                         EASTERN DIVISION

3   UNITED STATES OF AMERICA,      Case No. 1:01CR352
                                   Cleveland, Ohio
4              Plaintiff,          Tuesday, October 9, 2001
                                   9:30 a.m.
5        vs.

6   HARDY INGRAM,

7              Defendant.

8                    TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE LESLEY WELLS
9                UNITED STATES DISTRICT JUDGE

10

11  APPEARANCES:

12  For the Government:        Christa D. Brunst,
                               Assistant United States Attorney
13                             1800 Bank One Center
                               600 Superior Avenue, East
14                             Cleveland, Ohio   44114-2600
                               (216) 622-3600
15
    For the Defendant:         Harvey B. Bruner, Esq.
16                             55 Public Square
                               Cleveland, Ohio   44113
17                             (216) 566-9477

18

19

20

21
    Court Reporter:            Heidi Blueskye Geizer, RMR, CRR
22                             801 West Superior Avenue
                               Cleveland, Ohio   44113
23                             (216) 357-7092

24  Proceedings recorded by mechanical stenography, transcript
    produced by computer-aided transcription.
25

EXHIBIT
2

1      MORNING SESSION, TUESDAY, OCTOBER 9, 2001 9:30 A.M.

2              THE COURT:  Good morning.

3              MR. BRUNST:  Good morning Your Honor.

4              MR. BRUNER:  Good morning.

5              THE COURT:  This is a hearing regarding a

6      proposed plea agreement in Case 01CR352, United States of

7      America versus Hardy Ingram, who is present with Mr. Bruner

8      representing him.  Ms. Brunst is here for the United

9      States.

10         And basically, you were charged in a two-count

11     indictment.  The case was scheduled to go to trial today,

12     and I've been given a copy of a proposed plea agreement

13     here.  So what I need to do is put you under oath or

14     affirmation, and I'll ask you a series of questions, and

15     your answers to those questions will let me know what we

16     have to explore today in the hearing.

17         In addition, you will probably have questions come up

18     into your mind as we go along today, and any time you want

19     to talk to your lawyer, which you should do if you have a

20     question, then all you have to do is put your arm up or

21     something, and I'll stop, and we'll let you speak to

22     Mr. Bruner in private.  Okay?

23              THE DEFENDANT: Okay.

24              THE COURT:  All right.  First of all, let me

25     put you under oath or affirmation.  Just raise your right

3

1    hand.

2                    (The Defendant is Sworn.)

3                    THE COURT:  Good.  Okay.

4         Where were you born?

5                    THE DEFENDANT: Cleveland, Ohio.

6                    THE COURT:  And how old are you now?

7                    THE DEFENDANT:  I'm 30.

8                    THE COURT:  Are you still a U.S. citizen?

9                    THE DEFENDANT: Yes.

10                    THE COURT:  Did you have a chance with your

11    lawyer to go over your Constitutional rights --

12                    THE DEFENDANT: Yes.

13                    THE COURT:  -- before you read this paper

14    today?

15                    THE DEFENDANT: Yes.

16                    THE COURT:  Okay.  I may go over those with

17    you as we go forward, too, but let me ask you some more

18    questions.

19         Since you woke up, have you had any medicine or

20    alcohol?

21                    THE DEFENDANT: No.

22                    THE COURT:  Drugs?

23                    THE DEFENDANT: No.

24                    THE COURT:  Okay.  Have you ever been

25    hospitalized for mental problems?

```
1                    THE DEFENDANT: No.

2                    THE COURT:  How about for drug addiction?

3                    THE DEFENDANT: No.

4                    THE COURT:  Ever had any treatment for drug

5    addiction?

6                    THE DEFENDANT: No.

7                    THE COURT:  Are you involved with the law in

8    other ways other than in this case?  Are you involved with

9    any state cases, or anything else?

10                   THE DEFENDANT: No.

11                   THE COURT:  You're not on probation or parole

12   anywhere?

13                   THE DEFENDANT: No.

14                   THE COURT:  Okay.  Have you been completely

15   candid about your past in terms of any criminal involvement

16   with your lawyer so he knows how to advise you?

17                   THE DEFENDANT: Yes.

18                   THE COURT:  And have you had enough time to

19   work with Mr. Bruner?

20                   THE DEFENDANT: Yes.

21                   THE COURT:  Are you satisfied with the way

22   he's representing you?

23                   THE DEFENDANT: Yes.

24                   THE COURT:  Okay, good.

25        When we go over one of these plea agreements,
```

1    although I'll probably continue to ask you some questions

2    just about yourself, what I usually do is have the

3    government take the plea agreement and not go over every

4    word in it, but tell us what their view of this agreement

5    is, and then you listen, and I'll listen, and then I'll

6    come back to you and Mr. Bruner and find out whether or not

7    you're in agreement or you have something you want to add.

8    And then I'll go over certain sections of this agreement

9    with you.  Okay?  That's sort of the way we'll proceed.

10                    THE DEFENDANT:  Okay.

11                    THE COURT:  Did you read every word of this

12    agreement?

13                    THE DEFENDANT:  Yes.

14                    THE COURT:  What is your educational

15    background?

16                    THE DEFENDANT: I went to the 11th grade.

17                    THE COURT:  Okay.  Here in Cleveland?

18                    THE DEFENDANT:  Yes.

19                    THE COURT:  Okay.  Did you ever get a GED?

20                    THE DEFENDANT: No.

21                    THE COURT:  Were you able to read and

22    understand all of this?

23                    THE DEFENDANT: Yes.

24                    THE COURT:  You know what the government is

25    charging you with and what you're proposing to plead guilty

1    to?

2                THE DEFENDANT:  Yes.

3                THE COURT:  All right.  Well, I'm going to

4    turn to Ms. Brunst now and let her state for us what they

5    believe this is all about.  Okay?

6                THE DEFENDANT: Okay.

7                MR. BRUNST:  Thank you, Your Honor.  May it

8    please the Court, the government has entered into a plea

9    agreement with this defendant.  As the Court has already

10   correctly noted, the defendant is charged in two counts of

11   an indictment that was returned by a Grand Jury.  The

12   agreement provides for a plea of guilty to Count 1 of the

13   indictment, which charges a violation of Title 21, 841.

14   That is possession with intent to distribute cocaine base.

15        It is an offense, Your Honor, that's punishable as

16   set forth in the plea agreement by a mandatory minimum ten

17   years, up to life; but significant for the defendant, on

18   page 2 of the plea agreement the defendant recognizes he

19   has previously been convicted of two felony drug offenses,

20   and in this case, Your Honor, the United States has agreed

21   to forego the filing of 21, 851 enhancements.

22        And I should indicate for the record, although it

23   doesn't say that in the plea agreement, that if this

24   enhancement had been filed, the defendant would have been

25   subject to a mandatory life without the possibility of

1    parole sentence, and that's something that Mr. Bruner has

2    been successfully able to negotiate away with the United

3    States.

4        The agreement further provides, Your Honor, that the

5    amount of cocaine base, that is crack cocaine, in this case

6    is 116.9 grams, and further, that the defendant qualifies

7    based on his prior convictions in Cuyahoga County as a

8    career offender. He would therefore, Your Honor, be a base

9    level offense of 37, and, with an acceptance reduction the

10   agreement does provide for, that he would be a 34,

11   understanding that all career offenders are criminal

12   history category VI.

13       Your Honor, the government has agreed not to seek an

14   upward departure and will dismiss Count 2 at the time of

15   sentencing.

16       The factual basis is set forth in the plea agreement,

17   and the defendant has waived his right to appeal not only

18   from his guilty plea and from his sentence, Your Honor, but

19   also, he's waived his 2255, that is, habeas rights.

20           THE COURT:  Okay.  So in your opinion, if

21   everything falls into place, and if I, in fact, give him

22   acceptance of responsibility, since we understand that he

23   is a VI --

24           MR. BRUNST:  Yes, ma'am.

25           THE COURT:  -- he's going to fall into what

1    category?

2                    MR. BRUNST:   34-VI, Your Honor.

3                    THE COURT:   Which is?

4                    MR. BRUNST:   I believe that's 262 to 3 --

5                    MR. BRUNER:   I don't have my guidelines book.

6                    MR. BRUNST:   262 is the bottom.

7                    THE COURT:   I'll look for it here for a

8    minute.   I want you to know exactly what all these numbers

9    translate into.

10                    MR. BRUNST:   I believe it's 262 to 327, Your

11   Honor.

12                    MR. BRUNER:   I think that's right.

13                    THE COURT:   Is that right?

14                    MR. BRUNER:   Yes, Your Honor.

15                    THE COURT:   You're right.   The reason I look

16   at it so carefully is that although this is a lot better

17   than life or a lot better than just the ten years to life

18   kind of situation, I want to get as specific as we can,

19   because when you know you're going to fall into a certain

20   range, it's important to say that, the actual time, out

21   loud; in every case, not just your case.   We always do

22   this.

23                    THE DEFENDANT:   Okay.

24                    THE COURT:   But it's 262 months to 327.

25   That's the range.   Okay?   Got that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right, thank you.

3     And let me turn now to Mr. Bruner and see if this is

4     your basic understanding.

5          MR. BRUNER:  Yes, Your Honor.  The plea

6     agreement stated by Ms. Brunst is absolutely accurate.  The

7     guideline level, he's been explained all of this, I've gone

8     over all of his rights and the options that he had with

9     regard to this case.

10     As the Court will note, in the factual basis he

11     signed a written statement admitting his guilt at the time

12     of his arrest.

13     We do reserve the right to file a motion for downward

14     departure, there is no prevention of that.  It is not

15     provided in the plea agreement.  And that's what we intend

16     to do at the time of sentencing, prior to the time of

17     sentencing.

18          Thank you, Your Honor.

19          THE COURT:  In regard to that, your lawyer

20     has said that he at the time of sentencing is -- or before

21     sentencing will file a motion to see if he can get a lower

22     level of offense here.  Do you understand though that even

23     though this agreement doesn't prevent him from doing that,

24     that there is absolutely no way anyone can promise you in

25     advance that you'll get that departure?

1    And that's why we take you on this hard road, to make

2    sure you see exactly what it is your plea agreement

3    provides for.

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  Do you understand that?

6                    THE DEFENDANT: Yes.

7                    THE COURT:  Okay.  It's tough, isn't it?

8    Okay.  Let me talk to you about your Constitutional rights.

9    I know your lawyer talked about your Constitutional rights.

10   I want to talk to you today.

11       It's also cold in this room, isn't it?

12                   THE DEFENDANT:  I'm scared, that's why I'm

13   shaking.

14                   THE COURT:  Yes, it is scary.  One of the

15   things that we have to go over again and again with you,

16   because it's important -- it's easier when you're sitting

17   in this room, really  -- because you realize we're talking

18   about you giving up certain rights that you have under the

19   Constitution in order to go forward on the agreement that

20   you and your lawyer have signed with the government, which

21   is sufficient for the government's purposes and which you

22   and your lawyer apparently have decided is a better way for

23   you to go, but you are entitled instead of having this plea

24   agreement to go forward to trial.  And if you did that,

25   let's just go over what would happen.

1    We'd be sitting here, you'd be there with your

2    lawyer, and Ms. Brunst would be over here, probably a few

3    other people at her table, and a whole bunch of citizens

4    would be in the back. And you and your lawyer and I and

5    Ms. Brunst would help select who would be on your jury.

6    And then those people would sit right up here in this

7    jury box, and Ms. Brunst would have the burden of going

8    forward and proving beyond a reasonable doubt, which is the

9    highest standard of proof, the hardest to prove, she would

10   have to prove to this jury, if she could, that you were

11   guilty of the crimes you'd been charged with.

12   Every time she went to put on evidence or have a

13   witness on the stand you and Mr. Harvey Bruner would have

14   the opportunity to challenge that, to cross-examine the

15   witnesses.

16   You could also bring your own witnesses to court, and

17   if someone didn't want to come with you, come down to court

18   with you, then you would have the subpoena power of the

19   Court to help get them here.

20   On the other hand, because you don't have to prove

21   anything, you're presumed innocent. You don't have to

22   prove that. And it's the government that has to do the

23   proving at trial.

24   You could simply sit at your trial table and not call

25   any witnesses, and not take the stand yourself. Although

1  you could do either of those things, you don't have to.

2  You could sit there and see when the jury goes out, and the

3  instructions of law, what do they find, how do they come

4  back, and that would be a jury trial.

5       And you're keeping some of your Constitutional

6  rights.  You're going to have a lawyer with you, whether we

7  go to trial or we don't, representing you at no cost to

8  you.  If you can't afford a lawyer, you would have a

9  lawyer.

10      But you're giving up the trial rights, this right to

11 cross-examine, and so forth, in favor of an agreement that

12 you've gone over carefully with your lawyer, right?

13             THE DEFENDANT: Yes.

14             THE COURT:  And I'm going to go over it a

15 little bit with you.

16      Do you understand those Constitutional rights?

17             THE DEFENDANT: Yes.

18             THE COURT:  You're kind of like at a fork in

19 the road.  You can go this way or that way.

20             THE DEFENDANT:  Yes.

21             THE COURT:  All right.  Then if you

22 understand those, we've gone over the fact that you would

23 be pleading to Count 1, and we've gone over the statutory

24 penalties here, which are ten years to life, a $4 million

25 fine, four years of supervised release.

1           The prior convictions here of the two felony drug
2      offenses are set forth here, and the government is agreeing
3      in this not to go forward with what they could file because
4      you've got two prior drug offenses.  Do you understand
5      that?

6                     THE DEFENDANT: Yes.

7                     THE COURT:  Okay.  That's part of your
8      agreement.

9           It also says you understand that if you violate a
10     condition of your supervised release the Court can revoke
11     your supervised release and sentence you to incarceration.
12     This is not like probation in the state system.  It's a
13     different thing.

14          It also says that you have to pay a mandatory $100
15     special assessment.  And then it says down here, on
16     sentencing, that the Judge can sentence you in any way that
17     is provided by law, and even if you got a different
18     sentence than what's provided by law, you couldn't back out
19     of this plea agreement once we enter it, if we enter it
20     today.  Do you understand that?

21                    THE DEFENDANT: Yes.

22                    THE COURT:  And then it says that I have to
23     consider all of the guidelines, and we've been over that
24     guideline calculation that we're going to deal with,
25     because you have entered into this agreement with the

1    government.

2         First of all, you agree that the amount of cocaine

3    base, which is crack, including relevant conduct known by

4    the government and attributable to you, is 116.9 grams, and

5    then your prior convictions are set forth here.  Those are

6    controlled substance offenses for the purposes of the

7    career offender guidelines.

8         It says here that you state that the convictions are

9    both constitutionally valid, that you were represented by

10   counsel during all proceedings regarding those prior

11   convictions, and that you qualify as punishable as a career

12   offender.

13        Is that your agreement?

14              THE DEFENDANT: Yes.

15              THE COURT:  And then it says you agree to a

16   base offense level for Count 1 of 37, and the government

17   says at this time they have no reason to believe that you

18   have not accepted responsibility, and that if you plead

19   guilty and you do not engage in any conduct that's

20   inconsistent with that plea, then the government will agree

21   to recommend to the Court that we reduce that by 3 levels.

22   And that would take you down to 34, which is the level we

23   talked about here.

24              THE DEFENDANT:  Yes.

25              THE COURT:  Okay.  Then it says you

1    understand that the decision regarding acceptance of

2    responsibility rests with the Court, and I have to

3    determine that.  And I can't determine it until after

4    there's been an investigation by the probation department,

5    and I have to follow the guidelines.

6         Do you understand that?

7              THE DEFENDANT:  Yes.  Yes.

8              THE COURT:  And it says here you recognize

9    that as a career offender your criminal history is VI.

10             THE DEFENDANT:  Yes.

11             THE COURT:  Okay.  Did Mr. Bruner explain all

12   that to you?

13             THE DEFENDANT: Yes.

14             THE COURT:  It says you could be ordered to

15   pay a fine, you could be ordered to pay the costs of your

16   incarceration or supervised release.  There isn't any

17   restitution here.  But it would all be determined by the

18   Court after an investigation by the probation department.

19   Do you understand?

20             THE DEFENDANT: Yes.

21             THE COURT:  And then it says you agree not to

22   seek an upward departure from the applicable sentencing

23   guidelines, but you reserve the right of allocution, which

24   means to talk at your sentencing, and to make a sentencing

25   recommendation.  And then Mr. Bruner has just pointed cut

1   he will probably file with the Court a reduction of

2   sentence that would occur because of a downward departure.

3   He has to meet certain legal rules about downward

4   departure.

5              THE DEFENDANT:  Okay.

6              THE COURT:  Factual basis:  Now, I want to

7   know if this is completely correct.  If there's anything in

8   here we need to change, we'll do it.

9       It says, you agree the government could prove the

10  following facts beyond a reasonable doubt:  On or about

11  December 1st, 1999, officers from the Euclid, Ohio, Police

12  Department and DEA, utilizing a confidential informant,

13  arranged to purchase 4 and a half ounces of crack cocaine

14  from you.

15      Correct?

16              THE DEFENDANT: Yes.

17              THE COURT:  And that you arrived at the

18  location, you were arrested in your vehicle, which

19  contained 116.9 grams of crack, tested and proved to be

20  crack by the DEA lab in Chicago.  Correct?

21              THE DEFENDANT: Yes.

22              THE COURT:  You signed a written statement

23  that admitted you possessed 116.9 grams of crack located in

24  your vehicle with the intent to distribute it to the

25  confidential informant.  Is that right?

1           THE DEFENDANT: Yes.

2           THE COURT:  The next paragraph is important,

3    because you're giving up any right to raise or appeal or

4    file any post-conviction writs, including all motions,

5    defenses, probable cause determinations, plea of guilty,

6    objections to the Court's entry of judgment against you,

7    imposition of sentence.

8        Did you go over that with your lawyer?

9           THE DEFENDANT: Yes.

10          THE COURT:  And you understand that you're

11   giving those up now before you know exactly what your

12   sentence is going to be?

13          THE DEFENDANT: Yes.

14          THE COURT:  And you understand that they are

15   rights that you have, just like the trial Constitutional

16   rights?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Okay.  It says here you've read

19   the agreement, it says your offer is freely and voluntarily

20   made, and no one has threatened or promised you anything or

21   forced you to do this against your will.  Is that right?

22          THE DEFENDANT: Yes.

23          THE COURT:  And it says some other things

24   here, but those are the ones I really wanted to go over

25   carefully, and there's a representation by Mr. Bruner.

1    Okay.  Do you have any questions about it?  If you
2    do, you should talk to your lawyer now.  Here is the way to
3    do it.  This sometimes helps.  Think back to when this all
4    first came down, you first found out about this.  Think
5    about whether there are any questions you haven't discussed
6    yet with your lawyer that you'd like to discuss before I
7    ask you what plea you want to enter.  Okay?  And just take
8    a few minutes, and then talk to him in private if you have
9    any questions whatsoever.

10    THE DEFENDANT:  Okay.

11    THE COURT:  Are you all right?  Do you have
12    your questions answered?

13    THE DEFENDANT: Yes.

14    THE COURT:  I just have one more for you.
15    Because you're in a wheelchair, I want to know whether
16    there's any treatment or medication, or anything else,
17    you've received in the last 24 hours.  Are you currently
18    under treatment?

19    THE DEFENDANT: No.

20    THE COURT:  Okay.  I'm always looking to see
21    whether there's anything that would interfere with your
22    ability to make a good decision right now.

23    THE DEFENDANT:  I understand.

24    THE COURT:  Okay, good.

25    Count 1 is short, I'm going to read it to you:  The

1    Grand Jury charges that on or about December 1st, 1999, in

2    the Northern District of Ohio, Eastern Division, you, Hardy

3    Ingram, also known as Mick, did knowingly and intentionally

4    possess with the intent to distribute approximately 116.9

5    grams of a mixture or substance containing a detectable

6    amount of cocaine base, crack cocaine, a Schedule II

7    narcotic drug controlled substance, in violation of Title

8    21, Sections 841(a)(1) and (b)(1)(A), United States Code.

9         To that charge, what plea do you want to enter?

10                  THE DEFENDANT: Guilty.

11                  THE COURT:  Is that your own decision?

12                  THE DEFENDANT: Yes.

13                  THE COURT:  Did anyone force you, pressure

14    you, pay you to do that against your will?

15                  THE DEFENDANT:  I couldn't hear you.

16                  THE COURT:  Did anyone force you, pay you, or

17    do anything to get you to do that against your will?

18                  THE DEFENDANT: No.

19                  THE COURT:  Do you understand all the

20    consequences to you?

21                  THE DEFENDANT: Yes.

22                  THE COURT:  Very well.  The Court is going to

23    find you're fully competent to enter this plea, there's a

24    factual basis that we've been over that undergirds your

25    behavior being adjudged guilty of this offense, and I will

1    adjudge you guilty of Count 1.

2         What happens now is that with your lawyer's advice

3    you go through a process which involves a presentence

4    investigation, and that investigation that's done by the

5    federal probation office will tell me much more about you

6    than I know right now before I sentence you.

7         And at the time of your sentencing the government has

8    an opportunity to say and present what they want to, but

9    you do, too.  And you get the final word, you and your

10   lawyer, and you can talk to him.  Okay.

11        Any question about between now and then, what goes

12   on?  Talk to Mr. Bruner if you have any questions.

13              THE DEFENDANT:  Okay.

14              THE COURT:  Do you have any questions?

15              MR. BRUNER:  No, Your Honor.

16              THE COURT:  Okay.

17              MR. BRUNST:  No, Your Honor.  Thank you.

18              THE COURT:  Thank you very much.

19              THE CLERK:  This Honorable Court is now

20   adjourned.

21              THE COURT:  You can remain on bond with

22   pretrial supervision.

23              THE DEFENDANT:  Okay.  Thank you.

24                    -  -  -  -  -

25

1          C E R T I F I C A T E

2

3        I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled

5    matter.

6

7          _Heidi Blueskye Geizer_    2-12-03

8          Heidi Blueskye Geizer, RMR, CRR        Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF OHIO

2
EASTERN DIVISION

3  UNITED STATES OF AMERICA,           )
                                       )
4           Plaintiff,                 )     Judge Lesley Wells
                                       )     Cleveland, Ohio
5       vs.                            )
                                       )     Criminal Action
6  HARDY INGRAM,                       )     Number 1:01CR352
                                       )
7           Defendant.                 )

8                        - - - - -

9           TRANSCRIPT OF PROCEEDINGS HAD BEFORE

10              THE HONORABLE LESLEY WELLS

11                 JUDGE OF SAID COURT,

12            ON TUESDAY, JANUARY 8, 2002
                         - - - - -

13  APPEARANCES:
    For the Government:      Christa D. Brunst
14                           Assistant U.S. Attorney
                             1800 Bank One Center
15                           600 Superior Avenue, East
                             Cleveland, Ohio 44114-2600
16                           (216) 622-3600

17  For the Defendant:       Harvey B. Bruner, Esq.
                             Bruner & Jordan
18                           55 Public Square
                             Cleveland, Ohio  44113
19                           (216) 566-9477

20  Official Court Reporter: Cynthia D. Lee, RPR
                             U.S. District Court - Room 539
21                           201 Superior Avenue
                             Cleveland, Ohio  44114-1201
22                           (216) 241-5622

23  Proceedings recorded by mechanical stenography; transcript
    produced by computer-aided transcription.
24

25

EXHIBIT
3

2

1          TUESDAY, JANUARY 8, 2002 AT 10:30 a.m.

2              THE COURT:  These are proceedings in case

3     01CR352, United States of America versus Hardy Ingram.  Mr.

4     Ingram is present with Mr. Bruner representing him.

5          Ms. Brunst is here for the United States.  Mr. Laffin

6     is here for the probation department.

7          Back in October, sir, you entered a plea of guilty to

8     Count 1 of the indictment in your case and you were

9     referred for a presentence investigation and a report.

10         What I'm going to do is to talk to you for just a

11    moment about how this sentencing hearing goes forward and

12    remind you that you should stop me any time you have

13    something you want to talk to your lawyer about.

14         Mr. Bruner is here and you can speak to him in

15    private, but because this is a sentencing hearing and it's

16    very important to you, don't --  I don't want you to wait

17    if you have an issue you need to talk to him about.  If

18    there is anything you don't understand, you'll just put

19    your arm up, and I'll stop, and we'll give you time to talk

20    to him.  Okay?

21             THE DEFENDANT:  Yes.

22             THE COURT:  All right.

23         The other thing I need to know is whether or not you

24    and your lawyer have completely gone over the presentence

25    investigation report, which was revised on the 21st of

         Cynthia D. Lee, Official Court Reporter (216) 621-7221

1    December.  Have you been through that with your lawyer?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  All right.

4        I've read that as well.  And today I'm not going to

5    just sit here and read it back to you, but I will go over

6    certain parts of it to set the context for the sentencing

7    hearing, and also because it may bring to your mind

8    questions, or it may bring into your mind something you

9    want to present.

10       After we've gone over this report -- that way I'll

11   turn to the government, and we will let them make their

12   statements, whatever those may be.  And then you and your

13   lawyer have the last word.  And you can present whatever

14   you think I should know about.  You also, yourself, can

15   speak.

16       Now, one of the things about your case is that we

17   also have a motion that your lawyer filed on your behalf as

18   well as the plea agreement in the case.  And so what I'm

19   going to do is when I get to the part of this report that

20   talks about what your lawyer raises in his motion on your

21   behalf, which is for a downward departure, I also have now

22   received a copy from the government of their response to

23   that, and we'll let them both talk with me about it.  I'll

24   make a decision, and then you'll know where we're going in

25   terms of the range of the sentencing.

          Cynthia D. Lee, Official Court Reporter (216) 621-7221

4

1          THE DEFENDANT:  Okay.

2          THE COURT:  Mr. Bruner, did you get a copy of

3   the government's response in opposition to your motion for

4   downward departure?

5          MR. BRUNER:  Yes, Your Honor, as I walked in.

6          THE COURT:  Have you had time --

7          MR. BRUNER:  Yes.

8          THE COURT:  -- to go over this?

9          MR. BRUNER:  Yes.

10         THE COURT:  All right.  Very well.

11     Starting out if you would go in your report to the

12  very end of the report.  I always go there first, it's at

13  page 15, to see if there are any objections.

14     And here what the government has said in their

15  objections has also been said really in their response to

16  the heartland issue that was raised in your motion for

17  downward departure.  And if you'll look at it with your

18  lawyer, you can see that, at least in my copy, and it

19  should be in your copy, the objection by the government

20  says that, "The assistant U.S. Attorney submitted the

21  following response to paragraph 77:  There is nothing about

22  this case that takes it outside the heartland of cases so

23  as to warrant a downward departure."  And then it says

24  also, "Considering the United States is foregoing a life

25  sentence and has no opposition to the low end of the