1          THE DEFENDANT:  I had a birthday.

2          THE COURT:  31, you had a birthday since this

3   report.

4          THE DEFENDANT:  Yes.

5          THE COURT:  Well, good.  That's fine.

6       Then the charges of the offense are set out here and

7   also some of the charges in the plea agreement, I'm not

8   going to go over that again, we've already gone over those,

9   but there is a recognition in paragraph five that you've

10  previously been convicted of two felony drug offenses

11  within the meaning of section -- paragraph 841(a)(1)(A) and

12  851, and also there is a recognition that the government

13  agreed to forego the filing of 851 notices.

14      Did you go over that part with your lawyer so you

15  understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Okay.

18      It also says that you agree that the prior felony

19  drug convictions are both controlled drug offenses for

20  purpose of the career offender guideline, which is 4B1.1,

21  and that the base offense level is 37 pursuant to Guideline

22  4B1.1A.

23      It also talks in the plea agreement about the

24  government recommending that you get acceptance of

25  responsibility.  And that was something that I would have

Cynthia D. Lee, Official Court Reporter (216) 621-7221

1  to determine here at the sentencing, if you remember, and

2  also your criminal history category.

3  THE DEFENDANT: Yes.

4  THE COURT: Okay. So that's just some of the

5  aspects of your plea agreement.

6  The offense conduct is set forth here. You were

7  arrested in your vehicle with 116.9 grams of crack cocaine.

8  And then there is some more in paragraph seven which

9  concerns something which we aren't going forward on in this

10  case, but that involved a firearm loaded with seven rounds

11  of ammunition discovered in your bedroom. But that's set

12  aside in terms of the plea agreement, and the government

13  agreed not to go forward with that. That's the fact which

14  would have greatly increased what you were facing in the

15  case.

16  THE DEFENDANT: Yes.

17  THE COURT: So you have the benefit of the

18  bargain with the government. And pretrial supervision, you

19  were put on pretrial supervision. You've been supervised.

20  You've complied with things. Your drug tests have been

21  negative.

22  On victim impact, it's the whole community really

23  with the sell of crack cocaine, which is highly addictive

24  and which is illegal.

25  The obstruction of justice, there is nothing that

1  shows you tried to impede or obstruct justice, so that's

2  good.

3        On acceptance of responsibility, you've submitted a

4  written statement. And it was submitted back in October,

5  and you said what it was, what your acceptance was. The

6  government has recommended that you be given acceptance of

7  responsibility. I think it's okay to give you that

8  acceptance of responsibility.

9        You do accept responsibility for the acts that you

10  did here, right?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Okay.

13        So now we get down to the base offense level. And

14  it's time to look at the motion that your lawyer has filed.

15  I've read the motion. I'm familiar with the cases that he

16  cited. Only this morning I have received a response to it

17  and I've read that from the government. And I'm familiar

18  with those cases.

19        And so I would ask the lawyers to each limit their

20  remarks knowing that I have in front of me and have read

21  your briefs, but I will let you, Mr. Bruner, go forward.

22              MR. BRUNER:  Your Honor, just briefly.

23        I -- we know what the plea agreement is here, there

24  is no question about it. The question becomes in fact if

25  in fact the criminal history category that he's in now

Cynthia D. Lee, Official Court Reporter (216) 621-7221

1    pursuant to the plea agreement seriously over represents

2    his criminal history.  I don't think there is any question

3    that it does.

4         This man has two priors, two prior drug offenses,

5    which admittedly puts him in an enhancement category.  But

6    the two priors were in '91 and I believe '92 -- I'm sorry

7    -- '90 and '92.

8         He was sentenced to a concurrent 18 month sentence.

9    Unfortunately, they were two separate case numbers and two

10   separate offenses, and even though he was sentenced to

11   concurrently, the federal government, of course, considers

12   those two prior drug offenses.

13        But I think the case law allows the court to look at

14   that situation, look at the facts.  And I agree with Ms.

15   Brunst, it's not over 15 years, they're about 10 years old,

16   and they can be counted against him.  But the fact is that

17   putting this man in a criminal history category six,

18   basically, is a career offender, and giving him 262 months

19   in view of his conduct here and in view of his past record

20   seriously over represents his criminal history category.

21        And I think that if the Court were to consider a

22   downward departure and to give him what I believe should be

23   the offense level he should have, and that's 29, and even

24   give him the upper end, which would be 135 months, which

25   would be a substantial amount of time for his conduct in

Cynthia D. Lee, Official Court Reporter (216) 621-7221

1    this case.

2        He was somewhat cooperative, it doesn't really show

3    on the record, he did turn a person in.  He was suppose to

4    do some more things for the government, which did not

5    occur, but he did turn another person in.  As a result of

6    his cooperation somebody else was arrested.  That doesn't

7    really show here, but it did happen.  And I would hope that

8    the Court consider the cases set forth, the Washington

9    case, the ^Mishoe case, the Perez case and downward

10   departure to level 29 in this matter.

11       Thank you.

12       THE COURT:  The criminal history calculation

13   is probably something we should have gone over before we

14   got into this, but it starts on page six and it goes over

15   to page seven.  If you follow it along with me you can see

16   the adult criminal convictions here.

17       There is a drug trafficking back in, when you were

18   age 19, back in 1989.  And there is a -- then the one that

19   follows that one, which is set forth in paragraph 29.  And

20   the computation shows the criminal history points as five.

21   That corresponds to criminal history category three, but

22   because you have two prior felony convictions of controlled

23   substance abuse, you are a career offender.

24       And that was the part that we were talking about when

25   I first started going through this on the record.  And that

Cynthia D. Lee, Official Court Reporter (216) 621-7221

1    means as a career offender your criminal history category

2    is a six.

3         I'll turn to Ms. Brunst now.

4              MS. BRUNST:   Thank you, Your Honor.

5         The government appreciates the Court taking the time

6    this morning to read the government's brief.  I'd like to

7    begin and just say something briefly today about something

8    that I didn't mention in my brief, but something that Mr.

9    Bruner mentioned, and that is, he mentioned the conduct

10   here, that is the conduct in the offense case.  He tends

11   this morning, Your Honor, to minimize the conduct in the

12   offense case.  And I would at this time respectfully

13   disagree with Mr. Bruner.

14        In the government's mind the sell of four ounces of

15   crack cocaine, that is a little over four ounces, 116 grams

16   of crack cocaine, is a significant sell of crack cocaine.

17   Within the meaning of the Guidelines and certainly within

18   the meaning of my experience, and, while I don't presume to

19   know the Court's experience, 116 grams is not a small sell

20   or a minuscule amount of drugs.  Considering the fact that

21   an ounce of crack cocaine is sold on the streets of

22   Cleveland anywhere between $1,000 and $1,200, that's nearly

23   $5,000, Your Honor, in crack cocaine that this defendant

24   managed to put together and sell, of course, as we know

25   now, to a DEA informant.

1    So I would disagree respectfully with Mr. Bruner's
2    statements to the Court that based on the offense conduct
3    here, that is, his implication that it's not serious
4    offense conduct or it's a small amount of drugs.  I would
5    respectfully disagree with the defendant and urge the Court
6    to adopt the opposite view that it is a very significant
7    amount of crack cocaine, at least in my experience.

8    Your Honor, Mr. Bruner in his brief and this morning
9    has argued in the government's view that there are two
10   basis for downward departure, one he cites to the age of
11   the conviction, that is, it's 1989 and 1991, and the second
12   he points to what I have denoted as lenient sentences that
13   the defendant received.

14   The age consideration was taken into consideration by
15   the Guidelines, as the government's brief I believe clearly
16   sets out.  Not all controlled substances offense
17   convictions count, Your Honor, they have to be within the
18   time limit.

19   In other words, if Mr. Ingram had been convicted of a
20   controlled substance offense 20 years ago, we know that a
21   simple reading of the Guidelines that that offense would
22   not count as a career offender predicate, it would be too
23   old to be counted under the Guidelines.  The two
24   convictions that he has are not too old, and I would then
25   respectfully urge the Court to reject Mr. Bruner's age

1    argument, if you will.

2         His second argument deals with what he denotes as a

3    lenient sentence imposed by the state court, that is, an 18

4    month concurrent state sentence.  And I would suggest to

5    the Court, as I have in the brief, that a lenient sentence

6    is not a reason for a downward departure.  Your Honor, a

7    lenient state sentence is a reason for an upward departure.

8    Obviously, the government is not seeking that in the

9    instant case.

10         And, finally, Your Honor, as it relates to Mr.

11    Bruner's mentioning this morning of his -- the defendant's

12    cooperation, I think that it's appropriate for the Court to

13    know that the defendant did attempt to cooperate, that

14    someone was arrested as a result of his cooperation, and I

15    don't believe Mr. Bruner will disagree with me that in

16    exchange for that cooperation of the defendant I did not

17    file the 21, 851 enhancements, which would have subjected

18    this defendant with a life without parole sentence.

19         So I don't want the Court to have an impression that

20    he did something and was given nothing in return for it.

21    In fact, neither enhancement was filed, and that was in

22    exchange of his cooperation.  And actually I believe, Your

23    Honor, that Mr. Laffin noted that in his report that the

24    defendant had -- that the defendant did cooperate, and I

25    believe that he was rewarded for that cooperation in the

1    sense that I didn't file the 21, 851 enhancement.

2         Thank you, Judge.

3             THE COURT:  Thank you.

4         The request for downward departure is denied.  The

5    law, and as it has developed under these guidelines, really

6    does not apply in this situation.  And so we'll go forward

7    without the downward departure.

8         However, when you see the calculations here,

9    beginning on page five, we start with a 32 base offense

10   level, we give three points off that for acceptance of

11   responsibility because the defendant did accept

12   responsibility for his offense and he timely notified the

13   authorities of his intention to enter a plea of guilty, and

14   so we reduce it down to a 29.

15        There are enhancements that apply.  You see those

16   happening in paragraph 22.  And those are because the

17   defendant is -- the defendant is a career offender and it

18   states the reasons that this defendant fits in that

19   offense, that he was at least 18 years old at the time of

20   the offense, it's a felony controlled substance offense, he

21   has two prior controlled substance convictions, as the

22   guidelines contemplates, and so there is an adjustment to a

23   37 and acceptance of responsibility is reducing it down to

24   a 34.  So we end up under the calculations made by the

25   probation officer here with a 34 and we have a criminal

Cynthia D. Lee, Official Court Reporter (216) 621-7221

1    history category of six.

2         Other criminal conduct, as there is a whole bunch of

3    stuff set forth on two pages, I basically am not taking

4    those into account for this sentencing.  Although there --

5    it's always important to note them but --

6         Personal and family information, there is a lot of

7    personal information here.  And I've read it.  There may be

8    things that you want me to pay particular attention to, but

9    I have read them all, and they include your children,

10   something about your children and their mothers.

11        In your physical condition, you have since `94 been

12   paralyzed from the waist down, and that occurred when you

13   were shot in the back after leaving a club at night -- or

14   leaving a club.  And you had three months hospitalization

15   following that.  You've used a wheelchair since then, and

16   you suffer a spinal cord injury, and you were treated by

17   Dr. Frost of Metro Health, apparently.  Is that right?

18                    THE DEFENDANT:  Yes.

19                    THE COURT:  Okay.

20        You also have had bouts of asthma and you've had

21   spinal meningitis back in `96.  Is that right?

22                    THE DEFENDANT:  Yes.

23                    THE COURT:  Okay.

24        Do you take any medications now?

25                    THE DEFENDANT:  No.

              Cynthia D. Lee, Official Court Reporter (216) 621-7221

1      THE COURT:  Okay.

2      So since you woke up this morning have you had any

3  medicine, or alcohol, or drugs?

4      THE DEFENDANT:  No.

5      THE COURT:  Okay.

6      You've never had any mental health treatment or

7  medications and you don't believe you have any need for

8  mental health treatment.  Is that right?

9      THE DEFENDANT:  Yes.

10     THE COURT:  Substance abuse goes back to when

11  you were 15 to 18, and you used varieties of cocaine,

12  marijuana, acid.  You thought you were addicted up until

13  1989.  And you've had some weight lost and other things

14  along with your drug use.  You have not used any illegal

15  drugs except sometimes for marijuana since '89, and you

16  last used marijuana two or three years ago.  So as I

17  understand this, you're not currently using; is that right?

18     THE DEFENDANT:  Yes.

19     THE COURT:  Okay.  That's going to help you.

20     You consider yourself to be a normal drinker and you

21  -- it doesn't show any treatment for alcohol, but you

22  haven't needed any, right?

23     THE DEFENDANT:  What?

24     THE COURT:  You haven't needed any, have you?

25     THE DEFENDANT:  No.

Cynthia D. Lee, Official Court Reporter (216) 621-7221

1                    THE COURT:  Okay.  Good.

2          You've had some AA meetings that you attended back in

3    '91; is that right?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  Okay.  But you're testing

6    negative for drugs now.

7          When I talked about your high school education, you

8    did go to the tenth grade at Adams.

9                    THE DEFENDANT:  11th.

10                   THE COURT:  11th?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  At Adams.  Good.

13         And then it talks about your employment record.

14   You've had sporadic employment.  And you have been a cook,

15   a dishwasher, and you've done a little bit of work with a

16   cousin --

17                   THE DEFENDANT:  He's here.

18                   THE COURT:  -- for home repair jobs.  You may

19   be able to get some training and things that are going to

20   help you get a GED, which would really help you, since

21   you're going to be incarcerated for a while.

22         Your financial situation is set forth here.  You have

23   a residence.  It's valued a $75,000.  It has a $42,000

24   mortgage.  And so you have some equity in the house, about

25   $33,000, and that's good.

                Cynthia D. Lee, Official Court Reporter (216) 621-7221

1    But in terms of your monthly cash flow it's low and

2    you depend upon Social Security income at this point and

3    county disability payments. And that's only if we don't

4    include your girlfriend's income, that's about $660 a month

5    that comes in just to you.

6          THE DEFENDANT: Yes.

7          THE COURT: Although I suppose you can pay a

8    fine in this case, I'm not going to assess any fine in this

9    case. You've got two young children out there. If anyone

10   needs support and help, they do.

11         Okay. There was -- there is a paragraph here called

12   the impact of plea agreement and, of course, in your case

13   it's strong because you and your lawyer were able to make

14   an agreement that takes you out of a, what is a, mandatory

15   life sentence and puts you into a different kind of

16   sentence. It's still a lot of time, but it's -- there is

17   something at the end of it that's open, which makes a big

18   difference.

19         You would be subject to mandatory drug testing when

20   you come out.

21         And there is no restitution issue in this case.

22         So what we're looking at in terms of range is 34-6,

23   means 262 to 327 months, with five years of supervised

24   release to follow, no fine, and a special assessment of

25   $100.

Cynthia D. Lee, Official Court Reporter (216) 621-7221

1    So what I'm going to do now is let the government say

2    anything in addition they want to say about your

3    sentencing.  Then you and your lawyer can work together to

4    present whatever you wish to present to me.

5              THE COURT:  Ms. Brunst.

6              MS. BRUNST:  Your Honor, the United States

7    believes that the minimum sentence, in this case 262

8    months, would be the appropriate sentence for this

9    defendant.

10    Thank you.

11              THE COURT:  Mr. Bruner.

12              MR. BRUNER:  Certainly in view of the hearing

13    we had this morning, the fact that 262 months is involved,

14    we believe that the Court would, hope that the Court would,

15    give him a minimum sentence.

16    I would also ask, even though he doesn't currently

17    have a drug problem, if the Court would consider placing

18    him into the 500 hour drug program because he has had past

19    problems.

20              THE COURT:  Right.  He has a history.

21    Mr. Ingram, is there anything you'd like to say

22    before I sentence you?

23              THE DEFENDANT:  I just want to say that I

24    apologize to my family for the position I put them in, and

25    my kids, and to the United States government for me doing

Cynthia D. Lee, Official Court Reporter (216) 621-7221

1    the wrong that I had done.  I mean it was hard for me

2    growing up, and I mean that's no excuse or nothing, but I

3    mean -- I --

4                    THE COURT:  It is hard.  You can see that we

5    see this frequently.  And you, I think, seem to be

6    recognizing you've got two youngster for whom it's going to

7    be hard too.  There are some things you can do regarding

8    that, that is that during this time you can try and do

9    things like get your GED, to get a hold of any kind of

10   alcohol or drug addiction that you want to pay attention to

11   while you're there, and get some other kinds of training if

12   you can.  To the extent that you can do that, and then they

13   have the promise that, from you, that you'll try and make

14   it better for them.  And that's, you know, that's

15   important.

16                    THE DEFENDANT:  And I mean I feel -- I

17   understand the guidelines and everything now and

18   everything, but I feel that 262 months, I'll be 50 years

19   old then.  I mean when am I going to see my kids graduate.

20   I probably won't see them from kids or go to college and

21   all that.  I understand I put myself in this predicament.

22   And I really do apologize to them for that.

23            And it's hard already for me.  I've been shot, I've

24   been in a comma, and now this.  I mean I understand that

25   the law is the law, and I did break the law, and I

                 Cynthia D. Lee, Official Court Reporter (216) 621-7221

1   understand that, and I respect -- I accept responsibility

2   of all that. I just feel that 262 months out of my life is

3   -- my life is going to be over. And I understand all the

4   arguments and everything, I just feel like I don't feel --

5   I understand -- it's just hard for me. You've just got to

6   bear with me.

7             THE COURT: Well, it is hard. It's very

8   hard.

9             THE DEFENDANT: I understand -- it's so hard

10  because I haven't killed anybody. I mean I've done

11  something bad, but I don't feel I've killed anybody. I

12  don't feel that I deserve 20 years. I mean me myself.

13            THE COURT: There is the first two times you

14  were sentenced you had a much lighter sentence in a

15  different sentence.

16            THE DEFENDANT: Yes.

17            THE COURT: I don't know how many people you

18  know who are addicted to crack cocaine.

19            THE DEFENDANT: I was addicted to crack

20  cocaine.

21            THE COURT: You have some idea what that does

22  to somebody's life.

23            THE DEFENDANT: Yes. Yes.

24            THE COURT: So nobody is saying that you

25  killed anybody here.

1          THE DEFENDANT:  I understand.  I understand.

2          THE COURT:  But people who get hooked on this

3     powerful drug, get hooked on it because it's available.

4          THE DEFENDANT:  Yes.

5          THE COURT:  And you're making it available in

6     a large quantity at this time in this case.

7          So, in any event, is there -- I mean you have

8     accepted responsibility and you're going to have ahead of

9     you a time when you can try and make a difference in one

10    way or another in your own life, as well as in the lives of

11    these two children, but it's going to be a challenging to

12    do it from prison.  There are, however, several things you

13    can take advantage of there.

14          THE DEFENDANT:  I understand that.

15          THE COURT:  All right.

16    Anything further, Mr. Bruner?

17          MR. BRUNER:  Nothing, Your Honor.

18          THE COURT:  Okay.

19          All right.  I'm going to make the judgment under the

20    Sentencing Reform Act of 1984 that you should and are,

21    Hardy Ingram, committed to the custody of the Bureau of

22    Prisons to be imprisoned for a term of 262 months.  That's

23    the bottom end of that range of sentencing.

24          Upon release from imprisonment you will be placed on

25    supervised release for a term of five years.  Within 72

          Cynthia D. Lee, Official Court Reporter (216) 621-7221

1    hours of release from the custody of the Bureau of Prisons

2    you shall report in person to the probation office in the

3    district to which you are released.

4        When you come out you will not be allowed to commit

5    any federal, state or local crimes, even that string of

6    local things that you had with speeding and da da da da da,

7    that kind of offense when you're released would land you

8    right back in this court and you could be looking at even

9    more imprisonment.

10       So I want you to just go into this understanding that

11   you're going to have to take all those loose ends of your

12   behavior that are illegal, even the ones that may seem

13   minor to you, and don't do that anymore because you will be

14   facing more problems, not only for violating those laws in

15   a case of their own, but also in this case.

16       The five years you're on supervised release you're

17   free but you're under the supervision of the court and we

18   bring people right back down to federal court if they

19   violate a condition, if they don't show up for a drug test,

20   they're down here looking at some kind of penalty.  If they

21   don't call in when they have to call in, then they're down

22   here again in this case.

23       So it's to whatever extent you have experience or

24   know people who have been in the state system, on probation

25   or something, this is not like that.  It's much stricter.

Cynthia D. Lee, Official Court Reporter (216) 621-7221

1    the 500 hour drug treatment program while you're

2    incarcerated. And that's a really good program. I want

3    you to know though that I'll recommend it for you because I

4    think you'll really benefit from it, but I don't have the

5    power to make them give it to you. So you be your own

6    advocate when you're in there, you tell them what you want

7    and why you want it. And our recommendation will be behind

8    it. Okay?

9              THE DEFENDANT: Yes, ma'am.

10             THE COURT: Now, before I get to your rights

11   to appeal, is there anything further from the government?

12             MS. BRUNST: Your Honor, respectfully I'd ask

13   that Count 2 be dismissed.

14             THE COURT: Okay. We'll dismiss the second

15   count, that's the one that had to do with the gun.

16             MS. BRUNST: And, Your Honor, I was also

17   wondering maybe the journal entry should maybe reflect Mr.

18   Ingram's physical status. I just wouldn't want it to be

19   overlooked in his placement.

20             THE COURT: One of the things that can help

21   you, if your lawyer helps you put that together, if you

22   take some kind of medical copy, not the real one, some kind

23   of medical information with you. There are a lot of people

24   who are in the Bureau of Prisons system who have actually a

25   number of gunshot problems and spinal problems, and so

              Cynthia D. Lee, Official Court Reporter (216) 621-7221

1    there are ways of caring for you while you're there.  But

2    it seems to help if somebody makes sure that they have the

3    right information from the beginning.

4              THE DEFENDANT:  Yes.

5              THE COURT:  So you talk to Mr. Bruner about

6    that.  And if he needs help, he can get it maybe through

7    you so that somebody knows --

8              THE DEFENDANT:  Okay.

9              THE COURT:  -- your medical situation.

10             MS. BRUNST:  Thank you, Judge.

11             THE DEFENDANT:  Thank you.

12             THE COURT:  Okay.  You have in your plea

13   agreement given up some of your rights to appeal.  And you

14   need to have a discussion with Mr. Bruner today.  We ruled

15   on a motion that he submitted today and there may be other

16   things that happened during the entire case that you and he

17   need to evaluate.

18        It's a very brief period for appeal.  And he needs to

19   look at what rights you gave up, and evaluate just for you

20   in a way that no one else can do whether or not there is a

21   legitimate appeal for to you take.

22        The reason you have to do it today, even though I

23   know you're thinking about other things, is because there

24   is a very short period of time in which an appeal could be

25   filed.

1    So let me make the findings now that in spite of the

2    fact that you own equity in this house, you are entitled to

3    a lawyer at public expense for appeal, and you would be

4    entitled to having the papers provided to you at no

5    expense.  And I do that because of your actual financial

6    situation and the needs of your family regarding that

7    property or that equity interest.

8        Okay.  Any questions?

9            MS. BRUNST:  No, ma'am.

10           MR. BRUNER:  Nothing, Your Honor.

11           THE COURT:  What is there regarding where he

12   is between now and when he is picked up?

13           MS. BRUNST:  No objection to a self

14   surrender, Your Honor.

15           THE COURT:  Okay.

16    So what we're going to let you do is remain under the

17   same conditions you're under now.  This will be good for

18   your kids and your family and you.  And get yourself ready.

19   I don't know when you will be asked to report, but your

20   lawyer can also give you some advice on that.

21           THE DEFENDANT:  I just want to say thank you

22   for letting me self surrender.

23           MS. BRUNST:  You're welcome.

24           THE COURT:  I think it will make things a

25   little better for you.  Make sure you don't mess up on

        Cynthia D. Lee, Official Court Reporter (216) 621-7221

24

25

1   that.  Make sure you show up.  Okay.

2                   THE DEFENDANT:  I just want to say that I

3   understand the guidelines and I appreciate what Mr. Bruner

4   has tried to do for me and everything, and thank you.

5                   THE COURT:  All right.  Very well.

6                   (Court adjourned.)

7                        C E R T I F I C A T E

8            I certify that the foregoing is a correct

9   transcript from the record of proceedings in the

10   above-entitled matter.

11

12

13

14   _____
    Cynthia D. Lee, Official Court Reporter
15   U.S. District Court - Room 539
    201 Superior Avenue
16   Cleveland, Ohio 44114-1201
    (216) 621-7221
17

18

19

20

21

22

23

24

25