UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

HARDY INGRAM ) CASE NO. 1:02 CV 2523
)
    Petitioner )
) JUDGE LESLEY WELLS
-vs- )
)
) MEMORANDUM OF OPINION AND
) ORDER DENYING § 2255 PETITION
UNITED STATES OF AMERICA )
)
    Respondent )

On 23 December 2002, petitioner pro se Hardy Ingram filed a petition to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. (Docket # 1). On 21 February 2003, the United States filed a brief in opposition to petitioner's motion. (Docket # 7). Mr. Ingram filed a reply brief on 26 March 2003. (Docket # 8).

For the reasons stated below, Mr. Ingram's § 2255 petition will be denied.

## BACKGROUND

Mr. Ingram was arrested on 1 December 1999, after he agreed to sell approximately four ounces of cocaine to a confidential informant who was working with the DEA and the Euclid Police Department. On 25 July 2001, Mr. Ingram was named in a two-count indictment. In Count 1, Mr. Ingram was charged with possession with intent

-1-

to distribute approximately 116.9 grams of cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). In Count 2, Mr. Ingram was charged with possession of a firearm having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). On 9 October 2001, pursuant to a written plea agreement, Mr. Ingram pled guilty to Count 1. The plea agreement contemplated that Mr. Ingram would be granted a three-level reduction for acceptance of responsibility. The Court accepted Mr. Ingram's guilty plea and approved the plea agreement.

At his 10 January 2002 sentencing hearing, Mr. Ingram confirmed orally for the Court that he understood the criminal history calculations contained in the presentence investigation report ("PSR"). (1/10/02 Tr. at 6). Mr. Ingram's counsel objected to Mr. Ingram's classification as a "career offender" pursuant to U.S.S.G. § 4B1.1, as calculated by the PSR. The Court nonetheless denied Mr. Ingram's motion for a downward departure and determined that Mr. Ingram qualified as a career offender. In addition, the Court granted Mr. Ingram a three-level reduction for acceptance of responsibility. The Court also granted the request of the United States to dismiss Count 2 against Mr. Ingram. The Court sentenced Mr. Ingram to 262 months of imprisonment as well as five years of supervised release and a $100 special assessment.

## LAW AND ANALYSIS

In his § 2255 petition, Mr. Ingram claims that: (1) his counsel was constitutionally ineffective; (2) his guilty plea was unlawfully induced; (3) the Court miscalculated his criminal history; and (4) the Court erred in denying his request for a downward departure

-2-

JAN. 13. 2005  4:05PM    USAO HCPU CLEVELAND    NO. 0910

from the applicable sentencing guidelines range. (Docket # 1 at 5-6). The Court will consider each of Mr. Ingram's grounds for post-conviction relief in turn.

### Claim of an Unlawfully Induced Guilty Plea

In his § 2255 petition, Mr. Ingram alleges that his "plea of guilty was unlawfully induced and not made voluntarily and with the understanding of the true nature of the charge or consequences of plea." (Docket # 1 at 5). In the plea agreement, Mr. Ingram expressly waived his right "to raise and/or appeal and/or file any post-conviction writs of habeas corpus concerning any matters pertaining to the prosecution including all motions, defenses, probable cause determinations, his plea of guilty, objections to the Court's entry of judgment against defendant and imposition of sentence under Title 18, United States Code, Section 3742 (sentence appeals)." (Docket # 7, Ex. 1, ¶ 11). Nevertheless, this Court will consider Mr. Ingram's claim of an unlawfully induced guilty plea on the merits because the allegation concerns the validity of the plea agreement itself.

To support the claim that his guilty plea was unlawfully induced, Mr. Ingram makes two specific allegations in his petition. First, Mr. Ingram alleges "false promises made directly to induced [sic] Petitioner's pleading guilty" before he was aware of the consequences of his plea. (Docket # 1 at 5). Second, Mr. Ingram alleges, "Petitioner's attorney also had begun to induce a threat to Petitioner with the same meaning as the wording used by 'Forced' or 'Coerced.' Thereby, Petitioner fearing for the welfare of himself and family." Id.

-3-

"Any right, even a constitutional right, may be surrendered in a plea agreement if that waiver was made knowingly and voluntarily." United States v. Ashe, 47 F.3d 770, 775-76 (6th Cir. 1995) (quoting Town of Newton v. Rumery, 480 U.S. 386, 393 (1987)). Here, the record reveals that Mr. Ingram knowingly and voluntarily entered into his plea agreement. To begin with, Mr. Ingram signed the plea agreement, in which he affirms that he had read the agreement and was pleading guilty freely and voluntarily in the absence of any threats or any promises, representations, or agreements other than those included in the plea agreement. (Docket # 7, Ex. 1, ¶ 12). Moreover, at his 9 October 2001 plea hearing, Mr. Ingram confirmed orally for the Court that he had read the plea agreement in its entirety and understood the charge to which he was pleading guilty. (10/9/01 Tr. at 5, 6). Mr. Ingram also twice confirmed orally that his guilty plea had been offered freely and voluntarily and that no threat or promise had been made to induce it. (10/9/01 Tr. at 17, 19).

Mr. Ingram's statements are clear and unambiguous acknowledgments that he entered into the plea agreement freely and voluntarily. At this stage of collateral review, this Court presumes that Mr. Ingram responded truthfully and accurately to the Court's questions. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). ("The representations of the defendant, his lawyer, and the prosecutor at ... a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."). Therefore, in light of the record in this case, Mr. Ingram's claim that his guilty plea was unlawfully induced is unavailing.

### Ineffective Assistance of Counsel Claim

In his § 2255 petition, Mr. Ingram also alleges that his counsel, Harvey Bruner, was constitutionally ineffective in representing him. Although the plea agreement included a waiver of Mr. Ingram's right to assert a post-conviction ineffective assistance of counsel claim, the Court will address this claim on the merits.

In Strickland v. Washington, 466 U.S. 668 (1984), the U.S. Supreme Court formulated the standards for ineffective assistance of counsel. The Supreme Court explained, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. A violation of the right to effective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
>
> Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687.

To demonstrate that counsel's performance was deficient, the defendant must show that "counsel's representation fell below an objective standard of reasonableness . . . [under] prevailing professional norms." Id. at 687-88. Federal

-5-

courts may address either the performance or prejudice element if one is dispositive. Id. at 697.

Mr. Ingram's petition mentions three instances of ineffective assistance of counsel.[1] First, Mr. Ingram alleges that Mr. Bruner failed "to make the court aware of the factors that may have been over represented to classify Petitioner as a 'Career Offender' pursuant to U.S.S.G. § 4B1.1." (Docket # 1 at 5). The transcript from Mr. Ingram's 10 January 2002 sentencing hearing, however, establishes that Mr. Bruner did, in fact, argue that Mr. Ingram should not be classified as a career offender. At that hearing, Mr. Bruner stated: "The question becomes . . . if in fact the criminal history category he's in now pursuant to the plea agreement seriously over represents his criminal history. I don't think there is any question that it does." (1/10/02 Tr. at 8-9). Mr. Bruner continued: "[T]he fact is that putting this man in a criminal history category six, basically, is a career offender, and giving him 262 months in view of his conduct here and in view of his past record seriously over represents his criminal history category." (1/10/02 Tr. at 9). It is clear from the record in this case, then, that Mr. Ingram's counsel was not deficient for failing to object to Mr. Ingram's classification as a career offender. Thus, the first alleged instance of ineffective assistance of counsel fails on the merits.

---

[1] The third instance to which Mr. Ingram made reference in his petition concerns promises that Mr. Bruner made "that lead [sic] Petitioner to believe that he was getting a lesser sentence." (Docket # 1 at 5). The Court addressed this allegation in the course of its discussion of Mr. Ingram's unlawfully induced guilty plea claim, as the allegation is more properly considered in the context of that claim rather than in the context of Mr. Ingram's ineffective assistance of counsel claim.

Another instance of ineffective assistance alleged by Mr. Ingram in his petition concerns Mr. Bruner's failure "to inform the Petitioner of his legal constitutional rights to argue Objections before his sentence regarding the information in his [presentence investigation] report, that could have made a difference at Petitioner's sentencing hearing." (Docket # 1 at 5). Once again, the record does not support Mr. Ingram's claim. The very first question the Court asked Mr. Ingram at his sentencing hearing was "whether or not you and your lawyer have completely gone over the presentence investigation report, which was revised on the 21st of December. Have you been through that with your lawyer?" "Yes," Mr. Ingram responded. (1/10/02 Tr. at 2-3). This Court presumes that Mr. Ingram's response to the Court's inquiry was a true and accurate one. See Blackledge, 431 U.S. at 73-74 (1977). Moreover, as discussed above, the record reflects that Mr. Ingram, through his counsel, did object to the PSR's indication of Mr. Ingram's status as a career offender by moving at the sentencing hearing for a downward departure from the applicable sentencing guidelines range. (1/10/02 Tr. at 8-10). Thus, the record does not support Mr. Ingram's allegation that his counsel failed to inform him that he could object to information contained in the presentence investigation report.

Even assuming that Mr. Bruner's performance was deficient because he failed to inform Mr. Ingram of his right to object to information contained in the PSR, Mr. Ingram has failed to show how such failure prejudiced his defense, as required by Strickland. Mr. Ingram does not allege, either in his petition or in his reply brief, any objection to the PSR that his counsel could or should have made and that could have affected his

-7-

sentence. Therefore, Mr. Ingram's claim that Mr. Bruner was constitutionally ineffective for failing to object to information contained in the presentence investigation report is unavailing.

Finally, although not mentioned in his § 2255 petition, Mr. Ingram alleges in his reply brief that Mr. Bruner failed "to make any contact with petitioner about the events of this case, or arrange to meet with petitioner, regarding the reviewing of petitioner's (PSR) presentence report." (Docket # 8 at 11). Once again, a review of the record shows that there is no factual basis to support Mr. Ingram's claim that his counsel was constitutionally ineffective. At Mr. Ingram's 9 October 2001 plea hearing, the Court asked him the following questions and received from Mr. Ingram the following reponses:

> The Court: And have you had enough time to work with Mr. Bruner?
>
> The Defendant: Yes.
>
> The Court: Are you satisfied with the way he's representing you?
>
> The Defendant: Yes.

(10/9/01 Tr. at 4). Moreover, at the conclusion of his sentencing hearing, Mr. Ingram volunteered the following statement: "I just want to say that I understand the guidelines and I appreciate what Mr. Bruner has tried to do for me and everything, and thank you." (1/10/02 Tr. at 28). Therefore, Mr. Ingram has not made the showing, required under Strickland, that his counsel's performance was deficient. Consequently, Mr. Ingram's claim of ineffective assistance of counsel fails as a matter of law.

**Mr. Ingram's Additional Claims**

In his § 2255 petition, Mr. Ingram asserts additional grounds for post-conviction relief. In particular, Mr. Ingram alleges that his "criminal history calculation overstates the seriousness of his prior state criminal conviction and conduct . . . that merit the enhancement to career offender pursuant to § 4B1.1" and, more specifically, that his "term of imprisonment in the state case . . . used to enhance petitioner [sic] level to career offender was wrongly received by the district court." (Docket # 1 at 5-6). In addition, Mr. Ingram alleges that the Court erred when it declined to depart downward from the applicable sentencing guidelines range. Id. In light of the plain and unambiguous waiver language of the plea agreement, these claims are waived.

## CONCLUSION

For the reasons stated above, Petitioner Ingram's § 2255 petition to vacate, set aside, or correct his sentence is denied.

IT IS SO ORDERED.

/s/Lesley Wells
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HARDY INGRAM | ) CASE NO. 1:02 CV 2523 |
| Petitioner | ) |
| | ) JUDGE LESLEY WELLS |
| -vs- | ) |
| | ) |
| UNITED STATES OF AMERICA | ) <u>JUDGMENT ENTRY</u> |
| Respondent | ) |

The Court, having contemporaneously entered its Memorandum of Opinion and Order Denying § 2255 Petition, hereby dismisses with prejudice Petitioner Hardy Ingram's motion to vacate, set aside or correct his sentence. Further, the Court certifies, pursuant to 28 U.S.C. § 2255, that Hardy Ingram has not made a substantial showing of the denial of a constitutional right and that there is no basis on which to issue a certificate of appealability.

IT IS SO ORDERED.

/s/Lesley Wells
UNITED STATES DISTRICT JUDGE

ADDENDUM C

No. 03-4113

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
DEC 03 2003
LEONARD GREEN, Clerk

HARDY INGRAM, )
)
   Petitioner-Appellant, )
)
v. )   O R D E R  1:02cv2523
)
UNITED STATES OF AMERICA, )            LW
)
   Respondent-Appellee. )
)

[Stamp: 03 DEC -5 PM 3:13 — DISTRICT COURT OF OHIO]

   Hardy Ingram, a pro se federal prisoner, appeals a district court order and judgment denying his motion to vacate his sentence filed under 28 U.S.C. § 2255. The filing of the notice of appeal has been construed as an application for a certificate of appealability. Cf. Fed. R. App. P. 22(b). In addition, Ingram moves for the appointment of counsel on appeal.

   Ingram pleaded guilty to one count of possessing with intent to distribute approximately 116.9 grams of cocaine base. In return, a second count charging him with being a felon in possession of a firearm was dismissed. The plea agreement further provided for a three-level reduction for acceptance of responsibility and included a waiver of Ingram's right to file either a direct appeal or a post-conviction attack on his conviction and sentence. On January 18, 2002, the district court sentenced Ingram to 262 months in prison, followed by five years of supervised release. This sentence reflected Ingram's status as a career offender pursuant to USSG § 4B1.1. Ingram did not appeal.

A TRUE COPY
Attest:
LEONARD GREEN, Clerk
By _____
   Deputy Clerk

In his motion to vacate, Ingram presented five grounds for relief: (1) counsel rendered ineffective assistance by failing to make the court aware of factors that may have been over-represented to classify him as a career offender, making promises that led him to believe he was getting a lesser sentence, and failing to inform him of his right to argue objections to information in the presentence report before sentencing; (2) his guilty plea was unlawfully induced and not made voluntarily; (3)-(4) the criminal history calculation overstated the seriousness of his prior criminal conduct, resulting in a career offender enhancement; and (5) factors unique to his case warranted a downward departure.

In a memorandum opinion and order entered on July 21, 2003, the district court denied Ingram's § 2255 motion. The district court found that the record did not support Ingram's assertions of an involuntary guilty plea and ineffective assistance of counsel and that, in light of the lawful plea agreement, his remaining issues were waived. A separate judgment was entered the same day.

An individual seeking a certificate of appealability is required to make a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); cf. *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). The Supreme Court recently held that "[a] petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Ingram's § 2255 motion does not meet this standard. Accordingly, Ingram's application for a certificate of appealability is denied. His motion for the appointment of counsel is denied as moot.

ENTERED BY ORDER OF THE COURT

*[signature]*
/Clerk

ADDENDUM D

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

HARDY INGRAM                  : CASE NO. 1:02 CV 2523
                              :
         Petitioner           : ORDER DENYING PETITIONERS
                              : MOTION TO VACATE JUDGMENT AND
    -vs-                      : DENYING A CERTIFICATE OF
                              : APPEALABILITY
                              :
UNITED STATES OF AMERICA      :
                              :
         Respondent           :

---

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 23 December 2003 petitioner Hardy Ingram filed a motion for writ of habeas corpus pursuant to 28 U.S.C. § 2255. (Docket #1). The government opposed the motion, (Docket #7), and the Court ultimately denied petitioner's motion. (Docket #9). Subsequently, petitioner was denied his application for a certificate of appealability by the Sixth Circuit. (Docket #13). Mr. Ingram is now before the Court on his motion to vacate judgment pursuant to Federal Rule of Civil Procedure 60(b)(1) and (6). The government did not file a response to petitioner's motion.

On 9 October 2001, Mr. Ingram plead guilty to possession with intent to distribute 116.9 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). (Docket #7). As part of his plea agreement, Mr. Ingram waived his right to collaterally attack his sentence by requesting a writ of habeas corpus. (Docket #7, Ex. 1). He was then sentenced on 10 January 2002 to 262 months of incarceration to be followed by a five year term of supervised release. Id. Mr. Ingram currently remains in custody.

Mr. Ingram argues in his Rule 60(b) motion that the Court mistakenly denied his petition for writ of habeas corpus. According to Mr. Ingram, even though he waived his right to file any challenges to his sentence pursuant to 28 U.S.C. § 2255 in a plea agreement, the Court should have exercised its authority pursuant to 28 U.S.C. § 1651(a) to grant him a writ of coram nobis.[1] (Docket #14). Rule 60(b) and the writ of coram nobis constitute two separate avenues through which a court might grant a petitioner relief. Rule 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> ...
> (6) any other reason justifying relief from the operation of the judgment.
> ...
>
> Writs of coram nobis...are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Fed. R. Civ. P. 60(b). While Rule 60(b) indicates that the writ of coram nobis was abolished, the United States Supreme Court clarified in U.S. v. Morgan, 346 U.S. 502 (1954), that the writ of coram nobis may sometimes be used to vacate federal convictions after a petitioner has already served his sentence and where relief under 28 U.S.C. § 2255 is unavailable. Morgan, 346 U.S. at 506.

In the case of a petitioner who files a motion pursuant to Rule 60(b) subsequent to

---

[1] "'Writ of error coram nobis' is [a] procedural tool whose purpose is to correct errors of fact only, and its function is to bring before the court rendering the judgment matters of fact which, if known at time judgment was rendered, would have prevented its rendition." Black's Law Dictionary 337 (6th ed. 1990).

2

being denied a writ of habeas corpus, the Sixth Circuit has held that the 60(b) motion equates to a successive habeas corpus petition. McQueen v. Scroggy, 99 F.3d 1302, 1335 (6th Cir. 1996). Thus, Mr. Ingram's motion must be treated as a subsequent petition for writ of habeas corpus. Successive section 2255 motions must be certified by the Sixth Circuit as containing newly discovered evidence or relating to a new rule of constitutional law. 28 U.S.C. § 2255. Mr. Ingram's motion was not certified by the Sixth Circuit nor does he allege facts that would warrant such certification. Therefore, under McQueen, this Court does not have jurisdiction to hear Mr. Ingram's motion and it is accordingly dismissed.

The Sixth Circuit may soon change the rule announced in McQueen. On 6 June 2003, the Sixth Circuit ordered the rehearing, en banc, of In re Abdur'rahman, 332 F.3d 960, in order to determine whether or not a Rule 60(b) motion filed after a petition for habeas corpus was denied must be treated as a subsequent habeas petition.[2] Several other jurisdictions have held, in contrast to the Sixth Circuit, that the way a court treats Rule 60(b) petitions filed subsequent to the denial of habeas petitions depends on the content of the motion. Specifically, where the Rule 60(b) motion attacks the underlying conviction, it must be treated as a successive habeas petition; but when the Rule 60(b) motion challenges the collateral review process, it is proper. See Rodwell v. Pepe, 324 F.3d 66, 67 (1st Cir. 2003); Harris v. U.S., 367 F.3d 74, 77 (2nd Cir. 2004); U.S. v. Winestock, 340 F.3d 200, 207 (4th Cir. 2003); Dunlap v. Letscher, 301 F.3d 873, 875 (7th Cir. 2002). Although the Sixth Circuit has not yet issued its en banc opinion, the rule as articulated

---

[2] See Cooey v. Bradshaw, 216 F.R.D. 408, 411-15, (N.D. Ohio 2003) for a discussion of the Sixth Circuit's decisions on this issue as compared to other circuits and describing the procedural history of Abdur'rahman v. Bell, 226 F.3d 696.

3

under McQueen and the rule as described by the First, Second, Fourth and Seventh Circuits result in the same outcome in this case.

Even if the Sixth Circuit decides to treat Rule 60(b) motions similarly to the above mentioned circuits, Mr. Ingram's motion must still be dismissed. Mr. Ingram's Rule 60(b) motion contains two arguments, the first of which is proper and the second of which is not. Mr. Ingram first argues that the Court mistakenly failed to exercise its authority pursuant to 28 U.S.C. § 1651(a) when it denied his petition for habeas corpus. This argument challenges the collateral review process and is therefore the proper subject of a Rule 60(b) motion. Mr. Ingram asserts that the writ of coram nobis is available when section 2255 motions are not. While Mr. Ingram is partially correct, the writ of coram nobis is not always available just because section 2255 is not. In the Sixth Circuit, "[a] prisoner in custody is barred from seeking a writ of error coram nobis." U.S. v. Johnson, 237 F.3d 751, 755 (6th Cir. 2001). Because Mr. Ingram remains in custody, the writ of coram nobis is not available to him. Therefore, Mr. Ingram's first challenge to the denial of his petition for writ of habeas corpus must fail.

Mr. Ingram's second argument is that the career offender provision of the Federal Sentencing Guidelines should not have been applied to him at sentencing because the convictions on which the Court relied to apply this provision do not fall within the definition of "controlled substance offense." U.S.S.G. § 4B1.1 and 4B1.2. This argument constitutes a direct attack on Mr. Ingram's underlying sentence, rather than a challenge to the collateral review process, therefore it must be treated as a successive petition for writ of habeas corpus. As such, this Court does not have jurisdiction to entertain the motion. Therefore,

4

Mr. Ingram's motion is dismissed.

In the context of a habeas corpus petition followed by a Rule 60(b) motion, a certificate of appealability "should issue only if the petitioner shows that (1) jurists of reason would find it debatable whether the district court abused its discretion in denying the Rule 60(b) motion, and (2) jurists of reason would find it debatable whether the underlying habeas petition, in light of the grounds alleged to support the 60(b) motion, states a valid claim of the denial of a constitutional right." Kellogg v. Strack, 269 F.3d 100, 104 (2nd Cir. 2001). Because neither of these criteria are satisfied, a certificate of appealability is not warranted in this case.

    IT IS SO ORDERED.


                                      /s/ Lesley Wells
                                  UNITED STATES DISTRICT JUDGE

Date: 28 July 2004