UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HARDY INGRAM, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 04-40155-GAO |
| DAVID L. WINN, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION ON PETITION
FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

January 10, 2007

DEIN, U.S.M.J.

## I.  INTRODUCTION

On October 9, 2001, the petitioner Hardy Ingram ("Ingram" or the "defendant" or the "petitioner") pleaded guilty in the Northern District of Ohio to a charge of possession with intent to distribute approximately 116.9 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1).  He was sentenced on January 10, 2002 as a "career offender" to 262 months of incarceration, followed by five years of supervised release.  Ingram filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 ("Motion to Vacate") challenging, inter alia, his sentence and classification as a career offender, and alleging ineffective assistance of counsel.  That Motion to Vacate was denied by the United States District Court in the Northern District of Ohio on July 21, 2003.

Ingram then brought a petition pursuant to 28 U.S.C. § 2241, which is presently before this court.  Herein, Ingram alleges that he is "actually innocent" of being a career

offender, and that he was denied effective assistance of counsel during sentencing. While this court does find that a recent Sixth Circuit case may raise a question as to whether one of Ingram's prior convictions was properly classified as a predicate felony, this court also finds that Ingram's challenge is not properly brought under § 2241 as it is a direct attack on his underlying sentence. Therefore, and for the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Ingram's petition filed pursuant to 28 U.S.C. § 2241 be DENIED.

## II.  STATEMENT OF FACTS[1]

### Background

On July 25, 2001, a federal grand jury in the United States District Court for the Northern District of Ohio returned a two-count indictment charging Ingram with possession with intent to distribute approximately 116.9 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count I), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count II). The underlying facts, as described in the Government's Brief in opposition to the Motion to Vacate, were as follows:

> On or about December 1, 1999, officers from the Euclid, Ohio Police Department and the Drug Enforcement Agency, utilizing a confidential informant, arranged to purchase four and one half ounces of cocaine-base (crack cocaine) from Ingram. Ingram arrived at the location and was arrested in his vehicle which contained 116.9

---

[1]  Unless otherwise indicated, the facts are not in dispute. Relevant pleadings and materials from the underlying sentencing at issue in this petition are attached to the Government's Opposition to Petition Filed Pursuant to 28 United States Code Section 2241 (Docket No. 7-1) and will be cited as "Gov't Ex. __."

grams of cocaine base (crack-cocaine) which was tested and proven
to be cocaine-base (crack-cocaine). Ingram signed a written
statement admitting that he possessed the 116.9 grams of cocaine
base (crack-cocaine) located in his vehicle with the intent to
distribute it to the confidential informant. In addition, a firearm
loaded with seven rounds of ammunition was discovered in Ingram's
bedroom.

Gov't Ex. A at 2-3.

Ingram was represented by counsel, and agreed to plead guilty to Count I –
possession with intent to distribute cocaine-base. He entered into a written plea
agreement. Gov't Ex. A at Ex. 1 (hereinafter "Plea Agreement").[2] Therein, Ingram
expressly acknowledged that he understood that the statutory penalty for Count I was "a
mandatory minimum of ten years incarceration up to life incarceration, a $4,000,000.00
fine, and at least 4 years of supervised release." Plea Agreement at p. 2, ¶ 2. In light of
his further acknowledgment that "Defendant has previously been convicted of two
'felony drug offenses' within the meaning of Title 21, Sections 841(b)(1)(A) and 851,
United States Code," the Government agreed "to forego the filing of the Title 21, Section
851 Notices." Id.[3] Moreover, after confirming his understanding "that sentencing is
within the discretion of the Court and that the Court is required to consider any and all
applicable sentencing guideline provisions," Ingram acknowledged that he qualified as a

---

[2] Count II, charging Ingram with being a felon in possession of a firearm, was dismissed.

[3] Had such enhancements been filed, the defendant could have been subject to mandatory
life without parole. See Gov't Ex. A at Ex. 2 (transcript) at 6-7. Such enhancements, however,
would only be available for qualifying prior convictions.

career offender based on his prior convictions.  Id. at pp. 3-4, ¶¶ 4-5.  Thus, the Plea

Agreement provided:

> The parties further agree that the defendant's prior convictions in
> CR247944 (Cuyahoga County, Ohio) (convicted of trafficking in
> drugs) and CR262020 (Cuyahoga County, Ohio) (convicted of
> trafficking in drugs) are both "controlled substances offenses" for
> purposes of the career offender guideline as set forth in U.S.S.G.
> §4B1.1.  The Defendant further states that said convictions are both
> constitutionally valid and that he was represented by counsel during
> all proceedings regarding his prior convictions and he therefore,
> qualifies as and is punishable as a career offender pursuant to
> U.S.S.G. § 4B1.1.

Id. at p. 4, ¶ 5.  Finally, Ingram agreed to the waiver of defenses and appeal rights.  As

the Plea Agreement provided:

> 11.  The Defendant hereby waives any right to raise and/or appeal
> and/or file any post-conviction writs of habeas corpus concerning
> any matters pertaining to the prosecution including all motions,
> defenses, probable cause determinations, his plea of guilty,
> objections to the Court's entry of judgment against defendant and
> imposition of sentence under Title 18, United States Code, Section
> 3742 (sentence appeals).
>
> 12.  The defendant acknowledges that he has read this agreement and
> that his offer to plead guilty is freely and voluntarily made and that
> no threats, promises, or representations have been made, nor
> agreements reached, other than those set forth in this agreement, to
> induce the defendant to plead guilty....  This plea agreement sets
> forth the full and complete terms and conditions of the agreement
> between the defendant and the Government.  The defendant further
> declares that he is fully satisfied with the assistance provided by his
> attorney.

Id. at pp. 6-7.  Ingram's counsel also signed the Plea Agreement asserting that he had

discussed the case and agreement with Ingram, and had "advised the defendant of all

-4-

matters within the scope of Federal Rule of Criminal Procedure 11, the constitutional and
other rights of the accused, the factual basis for and the nature of the offense to which the
guilty plea will be entered, possible defenses, and the consequences of the guilty plea."
Id. at pp. 7-8.

Pursuant to the written Plea Agreement, Ingram pleaded guilty on October 9, 2001.
See Gov't Ex. A at Ex. 2 (transcript of plea hearing) (hereinafter "Plea Tr."). The court
(District Judge Lesley Wells) confirmed that Ingram was acting voluntarily, and was
satisfied with the representation of counsel. Plea Tr. at 3-4, 19-20. The court further
confirmed that Ingram fully understood the terms of the plea agreement. Id. at 4-5.
During the hearing, the Government reported that in light of the defendant's recognition
of his status as a career offender, it had agreed to forego the filing of enhancements under
21 U.S.C. § 851, which would have subjected Ingram to a mandatory life sentence
without the possibility of parole. Id. at 6-7. The court also reviewed with the defendant
the fact that the Agreement provided that, based on his two prior convictions for
controlled substance offenses, he qualified to be punished as a career offender. Id. at 14.
Based on these factors, the court informed the defendant, and the defendant acknow-
ledged, that the range of incarceration was 262 to 327 months. Id. at 8-9. Defense
counsel acknowledged the accuracy of the Government's representations, but reserved the
right to file a motion for downward departure. Id. at 9. The court expressly advised
Ingram that such a motion might be denied. Id. Finally, but without limitation, Ingram

expressly acknowledged that he was giving up his right to appeal even before he knew exactly what his sentence was going to be. Id. at 17.

Ingram was sentenced on January 8, 2002, and was represented by counsel at the sentencing hearing. Gov't Ex. A at Ex. 3 ("Sentencing Tr."). At that time, the court also addressed the defendant's motion for a downward departure. Sentencing Tr. at 3. The court again confirmed with the defendant that he had agreed that his prior felony drug convictions qualified him as a career offender. Id. at 6. Nevertheless, as defense counsel strenuously argued, while he might technically qualify as a career offender, so characterizing him "seriously over represents his criminal history." Id. at 8-9. Counsel argued that the offenses at issue where about 10 years old, and resulted in concurrent 18 month sentences, although they were separate offenses. Id. at 9. Therefore, defense counsel argued, the court should allow a downward departure. Id. The Government opposed the request on the basis that a substantial amount of cocaine base was involved, that the prior convictions were in the time period allowed to be considered by the Guidelines, and that a lenient state sentence should not negate the fact that Ingram had two prior drug convictions. Id. at 9-14. The court denied the request for downward departure. Id. at 14. However, the Government recommended the lowest guideline sentence of 262 months, which the court accepted. Id. at 18-19, 22. The defendant was advised to consult with counsel to determine whether there were grounds for appeal. Id. at 26-27. At the conclusion of the hearing, Ingram stated that he understood the Guidelines and appreciated what his lawyer had tried to do for him. Id. at 28.

In sum, as characterized by the government in response to Ingram's Motion to Vacate, "Ingram's counsel was successful in having Count 2 of the indictment dismissed, a violation of 18 U.S.C. § 922(g)(1), and in obtaining a three-level reduction for acceptance of responsibility. Moreover, because of Ingram's cooperation, the government did not file for enhancements pursuant to 21 U.S.C. § 851. If the enhancements had been filed for Ingram's two prior felony drug convictions, he would have faced a mandatory sentence of life without parole." Gov't Ex. A at 10.

Ingram did not take a direct appeal of his conviction or sentence. Instead, on December 23, 2002, he filed a pro se Motion to Vacate pursuant to 28 U.S.C. § 2255. Gov't Ex. B. Therein, he claimed that (1) his counsel was constitutionally ineffective; (2) his guilty plea was unlawfully induced; (3) the Court miscalculated his criminal history; and (4) the Court erred in denying his request for a downward departure. Id. at 2-3. In a Memorandum of Opinion and Order issued on July 21, 2003, the sentencing judge (Wells, D.J.) denied the Motion. Id. (hereinafter "Opinion"). While recognizing that Ingram had waived many of his rights to appeal, the court considered the defendant's claim that his guilty plea had been unlawfully induced on the merits, but found it to be unsubstantiated by the record. Opinion at 3-4. Similarly, the court addressed the merits of Ingram's claim of ineffective assistance of counsel. Id. at 5. Specifically, the court rejected Ingram's claim that counsel had failed to make the court aware that he should not be classified as a career offender, citing the number of times counsel had objected to Ingram's classification as a career offender. Id. at 6. The court also rejected Ingram's

claim that counsel had not fully advised him of his rights, citing the court's inquiry and Ingram's confirmation that he had been fully advised.  Id. at 7.  Moreover, the court noted that Ingram had failed to identify any errors in the PSR which would call into question his eligibility for consideration as a career offender.  Id.  Finally, the court rejected Ingram's assertion that he had not spent time with counsel, again citing his answers to the court's questions during the hearings.  Id. at 8.  Thus, the court concluded that Ingram had "not made the showing, required under Strickland, that his counsel's performance was deficient.  Consequently, Mr. Ingram's claim of ineffective assistance of counsel fails as a matter of law."  Id.

Finally, the court refused to address the defendant's claim that he had been improperly classified as a career offender.  As the sentencing court held, "[i]n light of the plain and unambiguous waiver language of the plea agreement, these claims are waived."  Id. at 9.  The defendant's Motion to Vacate was denied with prejudice.

Ingram then filed a notice of appeal with the Sixth Circuit.  Gov't Ex. C.  Treating the notice of appeal as an application for a certificate of appealability, the Court of Appeals concluded that Ingram had failed "to make a substantial showing of the denial of a constitutional right."  Id. at 2.  Specifically, Ingram had failed to demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Id. (quoting Miller-El v. Cockrell, 537 U.S. 322,

-8-

327, 123 S. Ct. 1029, 1034 (2003)).  Therefore, the application for a certificate of

appealability was denied.  Id.

Ingram then filed a Motion to Vacate Judgment Pursuant to Federal Rules of Civil

Procedure 60(b)(1) and (6).  See Gov't Ex. D.  By this motion, Ingram again sought

reconsideration of his conviction as a career offender, among other things.  Of relevance

to the instance petition, the sentencing court ruled as follows:

> Mr. Ingram's second argument is that the career offender provision
> of the Federal Sentencing Guidelines should not have been applied
> to him at sentencing because the convictions on which the Court
> relied to apply this provision do not fall within the definition of
> "controlled substance offense."  U.S.S.G. § 4B1.1 and 4B1.2.  This
> argument constitutes a direct attack on Mr. Ingram's underlying
> sentence, rather than a challenge to the collateral review process,
> therefore it must be treated as a successive petition for writ of habeas
> corpus.  As such, this Court does not have jurisdiction to entertain
> the motion.  Therefore, Mr. Ingram's motion is dismissed.

Id. at 4-5.

## The Habeas Petition

In his habeas petition (Docket No. 1), supporting "traverse to government's

opposition" (Docket No. 8) and amended memorandum (Docket No. 9), Ingram argues

that he is "actually innocent" of being a career offender.  Specifically, he contends that on

June 10, 1991, he entered a plea of guilty in state court to "simple possession of bulk

quantities of cocaine, in violation of ORC 2925.11" and that this does not qualify as a

predicate offense for his status as a career offender.  See Docket No. 1 at 2; Docket No. 9

at 5-6.  With respect to his second predicate offense, Ingram contends that on February 6,

1991 he pleaded guilty to "a single count of an indictment charging him disjunctively with, inter alia, transportation of a controlled substance, or preparing such a controlled substance for transportation."  Docket No. 1 at 2 (emphasis omitted).  His counsel's failure to raise a meaningful challenge to his classification as a career offender, according to Ingram, constitutes ineffective assistance of counsel.

        The record regarding Ingram's prior criminal record is not clear.  Ingram has attached to his habeas petition the "Journal Entry" from the Cuyahoga County state court dated June 10, 1991 relating to CR-262020.  It lists the indictment as being for "trafficking in drugs, possess criminal tools."  The entry provides in relevant part:

> said defendant retracts his/her former plea of not guilty heretofore entered, and for plea to said indictment says he/she is guilty of drug law, RC 2925.03, (F-3), as charged in count two of the indictment, which plea/pleas, on the recommendation of the prosecuting attorney is/are accepted by the court.
>
> On recommendation of the prosecutor, counts one and three are nolled.

Docket No. 1 at Ex. A.  Unfortunately, this entry does not comport with the excerpts from the transcript of the plea hearing of June 10, 1991, which are also attached to the habeas petition as Ex. A.  Therein, the prosecutor described the indictment as involving three relevant counts.  Count one "alleges a violation of ORC 2925.03, possession of cocaine over bulk but under three times bulk."  Transcript at 20.[4]  "Count two alleges a violation of drug law, 2925.03, knowingly prepare to ship cocaine."  Id. at 20-21.  The third count

---

[4] ORC 2925.03 has since been amended.

alleges a "violation of OCR 2923.24, possession of criminal tools; to-wit: Money and a

firearm." Id. at 21.  The state described the plea agreement as follows:

> As to defendant Hardy Ingram, the state wishes to amend the
> indictment by moving to nolle count two and count three.  Count
> one, 2925.11, is possession of cocaine, three times bulk, carries with
> it mandatory 18 [month] sentence....
>
> As to Hardy Ingram, possession and three times bulk carries with it a
> mandatory fine of $5,000 as well as the 18 months actual
> incarceration.
>
> As part of this plea agreement all defendants voluntarily forfeit all
> property confiscated during the course of the execution of the search
> warrant and waive any hearing to same.

Id. at 22-23.  Thus, it appears that, despite the Journal Entry, Ingram may have pleaded

guilty to a violation of ORC 2925.11 as opposed to ORC 2925.03, and that the charge

was in Count I, not Count II, of the indictment as amended.  As detailed below, the

distinction may be significant.

There are no other records relating to this conviction included in the record of this

case.  The transcript is incomplete and there is no description of the facts to which the

defendant pleaded guilty.  In the government's opposition to Ingram's original Motion to

Vacate, the government described this conviction as follows:

> Trafficking Cocaine (CR262020) - 1991: Ingram pleaded guilty to
> trafficking cocaine.  He was arrested in possession of 20 rocks of
> crack cocaine when he was observed by officers approaching
> vehicles and leaning into them making what the officers believed to
> be drug transactions.  A second drug trafficking count was
> dismissed.  On 6/10/91, Ingram was sentenced to 18 months
> incarceration and was released on 5/19/92.

Gov't Ex. A at 15.

With respect to the second predicate felony, CR-247944, the Journal Entry attached to Ingram's habeas petition provides that he pleaded guilty on March 21, 1991 "to trafficking in drugs, RC 2925.03(A)(2), as charged in the first (1) count of the indictment."  Docket No. 1 at Ex. B.  This is consistent with the transcript, also included in Exhibit B, in which the indictment was described as containing two counts, count one being for "preparation for shipment, cocaine, in violation of Revised Code Section 2925.03" and count two being for drug abuse in violation of ORC 2925.11.  Transcript at 3.  Ingram pleaded guilty to the first count, "preparation for shipment" and the second count was nolle prossed.  Id. at 3-4.  In its opposition to the Motion to Vacate, this conviction is described by the government as follows:

> Trafficking Cocaine (CR247944) - 1989: Ingram pleaded guilty to trafficking in cocaine and a drug abuse count was dismissed.  On 3/21/91, Ingram was sentenced to 1 year incarceration, he was released on 5/29/92.

Gov't Ex. A at 15.

Additional facts will be provided below where appropriate.

### III.  ARGUMENT

#### A.    Availability of Relief Under § 2241

A writ of habeas corpus pursuant to 28 U.S.C. § 2255 "provides the primary means of collateral attack on a federal sentence."  Pack v. Yusoff, 218 F.3d 448, 451 (5th Cir. 2000) (internal citations omitted); Chambers v. United States, 106 F.3d 472, 474 (2d

Cir. 1997) (petition pursuant to § 2255 challenges the imposition of a sentence).  Thus,

"§ 2255 is generally the proper vehicle for a federal prisoner's challenge to his conviction

and sentence, as it encompasses claims that 'the sentence was imposed in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction to

impose such sentence, or that the sentence was in excess of the maximum authorized by

law, or is otherwise subject to collateral attack.'  28 U.S.C. § 2255, ¶ 1."  Jiminian v.

Nash, 245 F.3d 144, 147-48 (2d Cir. 2001).

        In contrast to § 2255, a "motion pursuant to §2241 generally challenges the

execution of a federal prisoner's sentence, including such matters as the administration of

parole, computation of a prisoner's sentence by prison officials, prison disciplinary

actions, prison transfers, types of detention and prison conditions."  Jiminian, 245 F.3d at

146 (emphasis in the original).  See also United States v. Barrett, 178 F.3d 34, 50 n.10 (1st

Cir. 1999) (petitions pursuant to § 2241 generally attack the execution of a sentence);

Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000) ("petitions that challenge the

manner, location, or conditions of a sentence's execution  must be brought pursuant to

§ 2241 . . ."); Pack, 218 F.3d at 451 ("A section 2241 petition on behalf of a sentenced

prisoner attacks the manner in which the sentence is carried out or the prison authorities'

determination of its duration . . . .") and cases cited.  Applying these principles, it is

consistently recognized that a challenge to a defendant's classification as a career

offender is appropriately brought under § 2255.  See, e.g., Brackett v. United States, 206

F. Supp. 2d 183, 187 (D. Mass. 2002) (challenge to status as career offender after state

conviction was vacated must be brought under § 2255); <u>Campbell v. Yates</u>, 196 Fed. Appx. 774, No. 05-16213, 2006 WL 2012334, at *2 (11th Cir. July 19, 2006) (unpub. op.) (§ 2241 challenge to petitioner's sentencing as career offender dismissed — challenge must be brought under § 2255); <u>Blanton v. Wrigley</u>, 168 Fed. Appx. 238, No. 05-56225, 2006 WL 391876, at *1 (9th Cir. Feb. 13, 2006) (per curiam) (unpub. op.) (challenge to career offender enhancement must be brought under § 2255); <u>Littles v. United States</u>, 142 Fed. Appx. 103, 104, No. 05-2761, 1005 WL 1798272, at *1 (3d Cir. Aug. 1, 2005) (per curiam) (unpub. op.) (challenge to status as career offender could not be brought under § 2241).  The instant case is no exception.

      Section 2255 does include a "savings clause" which provides as follows:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, <u>unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention</u>.

28 U.S.C. § 2255 (emphasis added).  Pursuant to this "savings clause," "a federal prisoner may bring a claim challenging his conviction or imposition of sentence under § 2241, if it appears that the remedy afforded under § 2255 is 'inadequate or ineffective to test the legality of his detention.'"  <u>Charles v. Chandler</u>, 180 F.3d 753, 756 (6th Cir. 1999).  "Significantly, the § 2255 remedy is not considered inadequate or ineffective simply because § 2255 relief has already been denied, or because the petitioner is procedurally barred from pursuing relief under § 2255, or because the petitioner has been denied

permission to file a second or successive motion to vacate." Id. (internal citations omitted). The burden is on the petitioner to establish that his remedy under § 2255 is inadequate or ineffective. Id. Ingram has not met his burden.

While the scope of the savings clause has not been clearly defined, it is clear "that it applies only in the most extraordinary circumstances." Gonzales v. United States, 135 F. Supp. 2d 112, 121 (D. Mass. 2001), citing cases. "The savings clause has most often been used as a vehicle to present an argument that, under a Supreme Court decision overruling the circuit courts as to the meaning of a statute, a prisoner is not guilty within the new meaning attributed to the statute." Sustache-Rivera v. United States, 221 F.3d 8, 16 (1st Cir. 2000), citing cases. In essence, the prisoner claims he is actually innocent because he was convicted of a non-existent offense. See Gonzalez, 135 F. Supp. 2d at 121; see also Reyes-Requena v. United States, 243 F.3d 893, 904 (5th Cir. 2001) (after examining cases from the various circuits the court held that "the savings clause of § 2255 applies to a claim (i) that is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense and (ii) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first § 2255 motion").

Ingram has attempted to fit into this exception by arguing that he is "actually innocent" of being a career offender because the crime of possession of drugs alone does not constitute a predicate felony which may form the basis of his status as a career offender. It is undeniably true that to constitute a "controlled substance offense" for

-15-

purpose of a defendant's status as a career offender, the conviction must be for possession "with intent to manufacture, import, export, distribute, or dispense"; simple possession is insufficient. See Salinas v. United States, ___ U.S. ___, 126 S. Ct. 1675, 1675, 164 L. Ed. 2d 364 (2006) (emphasis omitted); United States v. Montanez, 442 F.3d 485, 488 (6th Cir. 2006), and cases cited.  Thus, USSG § 4B1.2(b) defines "controlled substance offense" in relevant part as an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits "the possession of a controlled substance (or a counterfeit substance) *with intent to manufacture, import, export, distribute or dispense*."  (Emphasis added).  Nevertheless, the claim that there was an error in sentencing remains the province of a § 2255 petition.

It is an open question whether a claim of "actual innocence" of an enhanced sentence satisfies the requirement of "actual innocence" for filings even in the context of § 2255 petitions.  See Dretke v. Haley, 541 U.S. 386, 396, 124 S. Ct. 1847, 1854, 158 L. Ed. 2d 659 (2004) (although defendant was admittedly wrongfully sentenced as an habitual offender, Court declines to address whether challenge raises the "actual innocence" exception excusing procedural default and holds that federal habeas court should have first addressed alternative grounds for relief).  If, as Ingram contends, a claim that a court miscalculated a sentence (and, therefore, the defendant was "actually innocent" of the sentence) is sufficient to qualify for the savings clause of § 2255, it would eviscerate the well recognized distinction between habeas petitions under §§ 2255 and 2241.  As detailed below, this is not a situation where any sentencing error is so clear

-16-

cut that it would be a miscarriage of justice not to alter the sentence immediately.

Compare Little v. United States, No. Civ. A. 01-40077RWZ, 2002 WL 1424581, at n.2

(D. Mass. July 1, 2002) (while recognizing that "actual innocence" is often a prerequisite

under the § 2255 savings clause, court allows a § 2241 petition in the "extraordinary

circumstances where justice demands it" because all parties agreed that the sentencing

court's increase of petitioner's sentence was based on a legal error so that petitioner was

"actually innocent" of having any prior convictions to support the increased sentence).  In

light of the fact that Ingram is not contending that he was convicted of a crime which

does not exist, or that he was factually innocent of any of the state crimes of which he

was convicted, or that there has been an intervening Supreme Court decision which estab-

lishes that he was wrongfully convicted, the alleged mischaracterization of his prior

conviction under the career offender statute should not permit him to transform a § 2255

petition into one appropriately brought under § 2241.  See Campbell, 196 Fed. Appx. at

747, 2006 WL 2012334, at *2 (unpub. op.) (claim that prior conviction was wrongfully

included in career offender calculations was not "based upon a previously unavailable

and retroactively applicable Supreme Court decision establishing that [petitioner] was

convicted of a nonexistent offense") (citing Wofford v. Scott, 177 F.3d 1236, 1244 (11th

Cir. 1999)).  By requiring Ingram to proceed under § 2255, he would still be free to seek

permission from the appropriate Court of Appeals to file a second or successive petition

for writ of habeas corpus.  See 28 U.S.C. §§ 2244, 2255.  Therefore, this court recommends that his § 2241 petition should be dismissed.[5]

### B.    Ingram Should Present His Claim to the Sentencing Court

It is particularly appropriate that further inquiry, if any, into Ingram's sentence be undertaken by the sentencing court in any event because the record before this court remains incomplete.  At the time of his conviction and sentencing, the law governing how to characterize prior drug convictions for career offender purposes was defined by the unpublished Sixth Circuit decision of Gibbs v. United States, 3 Fed. Appx. 404, No. 99-3302, 2001 WL 133120 (6th Cir. Feb. 5, 2001) (unpub. op.).  There, Gibbs had argued that one of his predicate controlled substance offenses, his conviction under Ohio Revised Code § 2925.03(a)(4), involved simple possession of a bulk amount of cocaine, and not distribution.[6]  The court held that it was bound to employ a "categorical approach limited to an examination of the fact of conviction and the statutory definition of the predicate offense" with no review of the defendant's actual criminal conduct.  Id. at 405 (internal quotation and citation omitted).  Applying this approach, the court concluded

---

[5] Since this court lacks jurisdiction to hear the § 2241 petition, I have not addressed the merits of the claim.  See Littles, 142 Fed. Appx. at 104, 2005 WL 1798272, at *1 (unpub. op.) (District Court erred in reaching merits of petition challenging sentence as a career offender which had been improperly brought under § 2241, not 2255).  Further analysis of the merits can, however, be provided if desired by the District Court.

[6] "Section (A)(4) criminalizes the knowing possession of a controlled substance in an amount equal to or exceeding the bulk amount, but in an amount less than three times the amount."  United States v. Montanez, 442 F.3d 485, 489 n.2 (6th Cir. 2006) (punctuation omitted).

that all violations of ORC § 2925.03, entitled "Drug Trafficking Offenses," related to
illicit drug trafficking regardless of the subsection of the statute involved, and, therefore,
constituted a qualifying predicate felony.  Id. at 406.  In contrast, the court held, simple
possession would constitute a violation of ORC § 2925.11. which was titled simply
"Drug Possession Offenses," and was a statute aimed at drug users and not sellers.  Id.
Thus, under Gibbs, it would be of critical importance whether Ingram plead guilty to a
violation of ORC § 2925.03, which would qualify as a predicate offense, or § 2925.11,
which would not.[7]  If he pleaded guilty to § 2925.03, however, no further inquiry would
be warranted.

A year after Gibbs, the Sixth Circuit issued another unpublished decision pur-
porting to apply the categorical approach to evaluating prior felony convictions, albeit in
a slightly different manner.  In United States v. Wright, 43 Fed. Appx. 848, No. 00-4468,
2002 WL 1822901 (6th Cir. Aug. 7, 2002), the defendant pleaded guilty to an attempt to
commit a violation of ORC § 2925.03.  Unlike in Gibbs, the Wright court did not limit its
"categorical" assessment to the statute as a whole, but instead determined that the statute
included both qualifying and non-qualifying crimes.  For example, subsection (A)(1)

---

[7] Gibbs later formed the basis of two other unpublished decisions by the Sixth Circuit.
Thus, in United States v. Franks, 98 Fed. Appx. 483, 487-88 (6th Cir. 2004), the court, relying on
Gibbs, found that a conviction under ORC § 2925.11 did not qualify as a controlled substance
offense, because it was a simple possession offense.  In United States v. Coteat, 133 Fed. Appx.
177, 179 (6th Cir. 2005), the court, relying on Gibbs, found that a conviction under ORC
§ 2925.03(A)(4) constituted a predicate offense for career offender status even though that
subsection made it illegal only to "possess a controlled substance in an amount equal to or
exceeding the bulk amount, but in an amount less than three times that amount."  See generally
United States v. Montanez, 442 F.3d at 490-91.

prohibited the sale or offer to sell a controlled substance and was found to be "a quali-

fying crime because it includes an element of distribution (i.e., sale)," while subsections

(A)(4) (possession of "a controlled substance in an amount equal to or exceeding the bulk

amount, but in an amount less than three times that amount") and (A)(6) (possession of "a

controlled substance in an amount equal to or exceeding three times the bulk amount")

were deemed not to be qualifying offenses because "mere possession will establish a

violation." Wright, 43 Fed. Appx. at 852. Since the statute included both qualifying and

non-qualifying crimes, the court reviewed the indictment to determine whether the

conviction qualified as being for a predicate felony. Id. at 852. The court refused to look

at the plea colloquy, however, since "the district court's inquiry must stop short of

embracing the actual conduct underlying the prior conviction." Id. at 853 (internal

quotation and citation omitted). Under Wright, it would again be important whether

Ingram pleaded guilty to a violation of ORC §§ 2925.03 or 2925.11. The indictment,

however, would indicate that his prior conviction was appropriately considered.

Recently, on May 3, 2006, the Sixth Circuit, in a published opinion, reviewed the

issue of whether state convictions under ORC § 2925.03 qualified as controlled substance

offenses for career offender status. United States v. Montanez, 442 F.3d 485 (6th Cir.

2006). After reviewing its prior decisions, the Sixth Circuit overruled Gibbs and its

progeny. Id. at 491. Rather, while confirming its use of a "categorical approach" to

determining whether a prior conviction qualified as a controlled substance offense, the

Court looked to the express language of the subsections at issue in ORC § 2925.03.

Where the conviction was for a subsection which referenced only "possession," the crime did not qualify.  Id. at 491-92 & n.5 (finding conviction of ORC §§ 2925.03(A)(6) and (A)(9) did not qualify since they merely required possession, albeit of a bulk amount, but noting that other subsections would qualify).  Thus, under the law as it now stands in the Sixth Circuit, it is relevant whether Ingram pleaded guilty to § 2925.03 and, if so, to which subsection.  The instant record, however, is insufficient for this court to determine whether Ingram's plea in CR-262020 was to former ORC 2925.03 or 2925.11 and, if so, to which provision of those statutes.[8]

Moreover, Montanez recognizes that if the language of the statute fails to be determinitive "a sentencing court may look to the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented in order to determine whether the prior crime qualifies as a controlled substance offense."  Id. at 489 (internal punctuation and citation omitted).  If such a review was warranted in Ingram's case, it could not be conducted by this court on the existing state of the record.  For example, but without limitation, the present record is insufficient to determine to which facts Ingram agreed so that they may be considered in determining if the conviction qualified as a predicate felony.  See, e.g., United States v. Bernal-Aveja, No. 05-4519, 2006 WL 3314539, at *3 (6th Cir. Nov. 15, 2006) (unpub.

___

[8] It seems clear from the record that in CR-247944, Ingram pleaded guilty to "preparation for shipment," which involved more than "mere possession" and would qualify as a predicate controlled substance offense.

op.) (in determining whether burglary conviction constitutes a "crime of violence" for enhancement purposes, statutory language inconclusive so court looks to plea colloquy); United States v. Calloway, 189 Fed. Appx. 486, 488, No. 05-3757, 2006 WL 2075282, at *2 (6th Cir. July 26, 2006) (unpub. op.) (in determining whether conviction was for crime of violence where statutory language is inconclusive, "the sentencing court examining the prior conviction can look to the facts of the crime of which the defendant was convicted, but can only consider facts to which the defendant plead guilty or was convicted").

The ambiguity in the record distinguishes this case from Little v. United States, No. Civ. A. 01-40077RWZ, 2002 WL 1424581 (D. Mass. July 1, 2002). In that case, the court determined that justice required a review of a § 2241 challenge to the validity of a sentence under the savings clause of § 2255 where the government fundamentally changed its position and agreed that the petitioner was "'actually innocent' of having any prior convictions which support[ed] an enhanced sentence." Little, 2002 WL 1424581, at *3. Significantly, the court concluded that under such extraordinary circumstances, "allowing the illegal sentence to stand would represent a grave miscarriage of justice." Id. Here, in contrast, the government does not agree that Ingram was improperly sentenced, and this court cannot make a determination on the basis of the record before it that Ingram was "actually innocent" of being a career offender. Accordingly, Ingram has not established extraordinary circumstances under which justice would require further review in connection with a § 2241 petition.

-22-

Nothing herein should be considered a ruling by this court that further review of Ingram's sentence should be conducted by any court, especially in light of his express adoption of his status as a career offender, his waiver of his right to appeal his sentence, the benefits he may have received from his plea agreement, and the fact that the underlying facts of the crime appear to be that he was engaged in the sale of cocaine, a qualifying offense. This discussion of the evolution of the law of the sentencing court and ambiguities in the record is intended only as further evidence of the fact that the savings clause of § 2255 has, in this court's view, no application in the instant case. Since the issues raised by Ingram's habeas petition cannot be raised in a § 2241 petition, this court recommends that his petition be dismissed. Any further review of his sentence is appropriately undertaken by the sentencing court, if at all.[9]

## IV.   CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Ingram's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Docket # 1) be DENIED. [10]

---

[9] The court notes that on December 9, 2006, the Magistrate Judge in the Southern District of Ohio refused to dismiss Gibbs' motion for relief from judgment brought pursuant to Fed. R. Civ. P. 60(b) following the Sixth Circuit decision in Montanez reversing Gibbs. The Magistrate Judge ordered briefing on the merits. Gibbs v. United States, No. 2:97-cv-556. 2006 WL 3759695, at *7 (S.D. Ohio Dec. 19, 2006).

[10] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The

_____/ s / Judith Gail Dein_____
Judith Gail Dein
United States Magistrate Judge

---

parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).